[Civil No. 3943. Filed December 20, 1937.]

[74 Pac. (2d) 577.]

BYRON F. HUNTER, as Treasurer of Apache County, Arizona, Appellant, v. NORTHERN ARIZONA UTILITIES COMPANY, a Corporation, and the APACHE COUNTY HIGH SCHOOL BOARD, Appellees.

Mr. Dodd L. Greer, for Appellant.

Mr. Earl Platt, for Appellees.

LOCKWOOD, J.—Northern Arizona Utilities Company, a corporation, hereinafter called the company, and Apache County High School Board, hereinafter the board, filed a petition in the superior court of Apache county, praying that the court issue a writ of *mandamus,* directing Byron F. Hunter, as treasurer of Apache county, hereinafter called defendant, to register and pay, when funds were available, a certain warrant drawn by the board upon defendant, in favor of the company. Defendant demurred to the complaint, and the demurrer being overruled and defendant standing upon his demurrer, judgment was rendered in favor of plaintiffs, whereupon this appeal was taken.

There are some four assignments of error, but we think it necessary to consider only the first, which is that there is no law authorizing the defendant to pay warrants drawn by the board. The question turns upon the construction of our statutes setting forth the powers and duties of the board and the county treasurer.

Chapter 13 of title 11, paragraph 2770 et seq., of the Civil Code of 1913 set forth the law of Arizona in regard to high schools as it existed at the time of the

adoption of that Code. By its terms there were three classes of high schools permitted in Arizona. The first class included those established by individual school districts, having an average daily attendance of 200 or more pupils. In such cases, the high schools were governed by the board of trustees of the particular school district involved, in the same manner as were the common schools of the district. The second class included what were known as union high schools. They were established by the joint action of two or more adjoining school districts consolidating themselves for high school purposes only, and the high school districts thus created were governed by a board of education, three of whom were required to be residents of the common school district where the high school was located, and two of the remaining territory. A trustee of one of the component common school districts was not eligible as a member of the board. The third class covered what were known as county union high schools. In this class there was but one high school to be established in the county, located in the manner set forth in the Code, and governed by a board of education selected in the same manner as the ordinary union high school district boards were chosen. The different boards governing all these high schools had the same powers and duties that were vested in the trustees of common school districts.

The manner in which the expenses of maintaining all the high schools described in the Code, as well as those of the common schools, were to be paid was set forth in paragraphs 2708 and 2819 of the Code, as follows:

"2708. It shall be the duty of the county school superintendent of each county: . . .

"(2) On the order of the board of school trustees of any district, to draw his warrant on the county treasurer for all necessary expenses against the school fund of any such district; the warrants must be drawn

in the order in which the vouchers therefor are filed in his office. No warrant shall be drawn unless the money is in the proper fund to pay it, nor shall any warrant for any teacher's salary be drawn unless the voucher shall state the monthly salary of the teacher and the name of the school month for which said salary is due. Upon receipt of such voucher the county superintendent shall draw his warrant upon the county treasurer in favor of the parties, and for the amount stated in such voucher. To keep open to the inspection of the public a register of warrants showing the funds upon which the warrants have been drawn, the number thereof, in whose favor, and for what purpose drawn, and also a receipt from the person to whom the warrant was delivered.''

''2819. It shall be the duty of the treasurer of each county:

''(1.) To receive and to hold as a special fund all public school moneys, whether received by him from the state treasurer, or raised by the county for the benefit of public schools, or from any other source, and to keep a separate account thereof, and when the same is apportioned among the school districts to open and keep a separate account of each district.

''(2.) On receiving any public school moneys amounting to one thousand dollars, subject to distribution, to immediately notify the county school superintendent of his county of the amount thereof.

''(3.) To pay over, on the warrants of the county school superintendent, duly endorsed by the person entitled to receive the same, any or all money.''

This established a definite and single system for the handling of the finances of all classes of grade and high schools. The taxes levied for the current maintenance of the public schools, after collection, were apportioned to the different districts as their interests appeared, and were held by the county treasurer for the benefit of the particular district, to be paid out by him *only on the warrant of the county school superintendent*. The governing board of any school would issue to the county school superintendent an order to

draw his warrant for necessary purposes upon the funds of the district, and if such order was made in accordance with the law, the county superintendent drew the proper warrant which, when presented to the county treasurer, was either paid, or, if there were no funds to the credit of the district, was registered for payment in the proper order. The law in regard to the order of payment of these warrants has been changed from time to time, but it is not material for the purpose of this case that we discuss that order.

In 1921 the Fifth Legislature adopted chapter 155 at its regular session. This act provided for the establishing of what were called county high schools in counties of the fourth class. The principal difference between the "county union high schools" authorized by the 1913 Code and the "county high schools" authorized by chapter 155, *supra,* was that the first class might exist in counties containing also separate high schools, either single district or union, and were governed by the general educational code so far as the powers and duties of their governing bodies and financial management were concerned; while the second class permitted no other form of high school in the county, and had a special law covering their finances. Section 5 of the act reads, in part, as follows:

"The County High Schools shall be in charge of a county high school board consisting of five qualified school electors of, said county, not more than one of whom shall be residents of any one public school district. They shall hold office for the term of five years or until their successors are elected and qualified."

There was no prohibition of a trustee of a common school district serving on the board, and while the remainder of the act names certain specific things which the board so chosen may do, there is no provision stating their general powers and duties. The

duties of the county treasurer in regard to the funds of the district established under the act are set forth in section 15 thereof, in the following language:

"It shall be the duty of the treasurer of such county: (1) To receive and to hold as a special fund all county high school moneys from whatsoever source received, and to keep a separate account thereof; (2) To pay over on the warrant of the county high school board, duly endorsed by the person entitled to receive the same, any or all moneys."

Under this section the county superintendent had nothing to do with the finances of the district; the county treasurer making payments on the direct warrant of the board.

In 1928 the legislature recodified all of the statutory law of Arizona. We have held in the case of *Estate of Sullivan,* 38 Ariz. 387, 300 Pac. 193, that it was the object of the Code Commissioner and the legislature, in preparing this new Code, to change the legal meaning of the existing laws as little as possible; its principal purpose being to reduce the existing laws in language and avoid redundancy. We, therefore, said that when a word, or phrase, or paragraph of the statutory laws then existing was omitted from the Code of 1928, we should presume the intention of the legislature was merely to simplify the language, rather than to make a material alteration in the substance of the existing law itself. But we further held that if the only reasonable conclusion which could be drawn from the new language was that it was intended to change the legal effect of the statute, the latest expression of the will of the legislature must prevail.

With this rule of construction before us, let us see what, if anything, the Code of 1928 has done in regard to chapter 155, *supra.* As it was originally adopted, chapter 155 contains eighteen sections and covers five pages of the Session Laws of 1921. In so

far as it appears in the Code of 1928, it is contained entirely in section 1082, covering about one-quarter of a page. It is evident that either chapter 155 was extremely verbose, or else the Code of 1928 has omitted or changed many provisions of the chapter. Let us compare the act and section. In the original act, nothing was said as to the general powers and duties of county high school boards, and they were to be chosen not more than one from any single public school district, while it was expressly provided that the county treasurer should pay the expenses of the district on warrants issued by the board. In section 1082, *supra,* the following language describes the governing boards of such districts and their powers and duties:

"A county high school board of five qualified school electors, not more than one of whom shall be resident of any one public school district, shall be appointed and elected and hold similar terms and *shall have the same powers and duties as prescribed for union high schools.*" (Italics ours.)

The provision of the act in regard to the duties of the county treasurer in handling the funds of the district was entirely omitted from the section. The explicit declaration in section 1082, *supra,* that the governing boards of county high schools should have the same powers and duties as prescribed for union high schools and should be chosen in the same manner as the governing boards of the latter class of schools, is so different in its effect from the manner of choosing boards of county high schools and the powers granted such boards in chapter 155, *supra,* and the entire omission from the section of the power explicitly conferred by chapter 155, *supra,* of drawing warrants directly on the treasurer, a power possessed by no other organization of the common and high schools of Arizona, creates a law so radically different in its terms and effect that we are compelled to believe that the legisla-

ture in section 1082, *supra,* intended to do, and did do, much more than to merely simplify the language and eliminate the redundancies of chapter 155, and that by section 1082 it adopted an entirely different system of handling the county high schools established by chapter 155 from that set up in the original chapter. That this is the more reasonable conclusion is indicated by the obvious inconvenience and incongruity of having one class of schools in the state of Arizona governed by a special law when every other one of the many school organizations within the state comes under the general law. We are, therefore, of the opinion that the legislature, in the Code of 1928, deliberately and intentionally changed the provisions of chapter 155 so as to bring the county high schools within the general educational system of the state by providing that their governing boards should have the same powers and duties as the governing boards of all the other common and high school districts in the state, including therein the necessity of having the county superintendent issue warrants drawn on the treasurer for the payment of the necessary expenses of the district in the same manner as was required by the general law of all their school districts.

The judgment of the superior court of Apache county is reversed and the case remanded, with instructions to sustain the demurrer of defendant, and for such other proceedings as are proper, in accordance with the views expressed herein.

McALISTER, C. J., and ROSS, J., concur.