[Civil No. 4262. Filed September 30, 1940.]

[105 Pac. (2d) 966.]

C. W. YANKE, Appellant, v. School District No. 65 OF MARICOPA COUNTY, ARIZONA, a Municipal Corporation, Appellee.

Mr. T. E. Scarborough, for Appellant.

Mr. Richard F. Harless, County Attorney, and Mr. Leslie C. Hardy, Deputy County Attorney, for Appellee.

LOCKWOOD, J.—C. W. Yanke, hereinafter called plaintiff, brought suit against School District No. 65 of Maricopa County, hereinafter called defendant, for wages which he alleged to be due him under section 1350, Revised Code of 1928, as amended by chapter 12 of the regular session of the 11th legislature, commonly

called the Minimum Wage Law. He stated that he had worked for defendant as janitor, watchman, gardener and general laborer for a total number of 2,372 hours, for which defendant paid him $630.00, and claimed a balance due him under the Minimum Wage Law, at the rate of 62½¢ per hour for the time worked, or $852.50. Defendant answered by a general denial, and pleaded, in substance, that only the sum of $720.00 had been budgeted to cover services of the character of plaintiff for the period which he worked, and that this had been paid him. Judgment was rendered in favor of defendant, whereupon this appeal was taken.

The facts are not seriously in dispute, and the issue is one of law only. It appears from the record that defendant had entered into a contract of employment with plaintiff at the rate of $60.00 per month for the period involved. During this period plaintiff actually worked the length of time set forth in his complaint, which, at the minimum wage for janitor and laborer, as fixed by the Arizona State Highway Commission, would have entitled him to almost $1,500. The district had budgeted for services like those performed by plaintiff, for the period during which he worked, only $720.00, which had been paid him. At the end of the fiscal year during which plaintiff performed the services, the district had on hand a surplus of several thousand dollars, not the proceeds of taxes for such fiscal year, which was neither expended nor obligated for any particular purpose.

It is the contention of defendant that this case is governed by the law laid down in *City of Phoenix* v. *Kidd,* 54 Ariz. 75, 92 Pac. (2d) 513, rehearing denied, 54 Ariz. 123, 94 Pac. (2d) 428, in which we held in substance that when the amount budgeted by a municipal corporation for any particular purpose had been either expended or encumbered according to law, the municipality could not legally expend any further sum from

the current year's taxes for such purpose, and that even though services were performed or material furnished to it for that purpose, no indebtedness was or could be created thereby.

Plaintiff argues that the decision of this court in the Kidd case, *supra*, was erroneous and inconsistent with other of our decisions, and earnestly urges us to overrule it. Our conclusions in that case were reached after a long and careful consideration of the law and the issues involved, and plaintiff has presented to us no reasons which cause us to believe we were in error therein.

But, says plaintiff, even assuming the rule in the Kidd case to be correct, it does not apply to the facts in the present case. In support of this contention he presents two points, (a) that the budget law does not apply to school districts, and (b) that it does not apply to surplus funds accumulated from taxes of years other than that in which the alleged indebtedness was incurred, if the latter is for an otherwise legal purpose. We consider these points in their order.

 Sections 3097–3099, Revised Code of 1928, comprise what is commonly referred to as the budget law. These sections, so far as material, read as follows:

"3097. *County and city officer to make annual statement and estimate; publication and notice.* The board of supervisors of each county, and the governing body of each incorporated city or town, . . . shall prepare . . . ; and an estimate of the different amounts which may be required to meet the public expense for the ensuing year. . . . The estimate shall contain a statement of the amount of money required for each item of expenditure necessary for county, city or town purposes, . . . The estimate shall be entered upon the minutes of the governing body . . . showing . . . the total amount of proposed public expense."

"3098. *Hearing on estimates and adoption thereof.* The boards of supervisors and governing bodies of incorporated cities and towns shall meet one week pre-

vious to the day on which they levy taxes, . . . the estimate as finally determined upon, shall be adopted, and no expenditure shall be made for a purpose not included in such budget, and no debt, obligation, or liability shall be incurred or created in any year in excess of the amounts specified therein as finally adopted for each purpose therein named; nor beyond the amounts therein proposed to be raised by taxation, except when the other sources of revenue have been and are first received as a means of liquidating such extra obligations and liabilities.''

It is the contention of plaintiff that these sections on their face refer only to the expenditures of counties and incorporated cities and towns as such, and that they do not in any manner affect budgets and expenditures of school districts. This requires an examination of the law covering such districts and the method by which their expenditures are determined and the funds therefor raised. Substantially speaking, the procedure set forth in the statutes is as follows: On or before the first day of July of each fiscal year the trustees of the school districts file with the county superintendent an itemized statement of the amount which they think will be needed for defraying the expenses of the schools within their district for the ensuing year. The county superintendent may revise the estimate made by the board of trustees so far as he thinks it needs revision in regard to the general county school levy, with certain limitations, the principal one being that the amount to be raised by the county levy shall not be less than $25 nor more than $40 per capita average daily attendance of the previous year, except with certain small schools for which a lump minimum levy is provided. If the amount asked for by the board of trustees exceeds the permissible levy for county purposes, plus the state school levy and certain other sources fixed by law, the deficit must be raised by a special levy on the property of the particu-

lar school district only. It will be seen that the board of supervisors has no power to alter the amount of money to be raised for each school district from that fixed by the board of trustees and the county superintendent as above, but the levy to raise the money requested, outside of the state and special funds above referred to, is made by the supervisors and not by either the district or the superintendent, and we think that in the estimates required by section 3097, *supra,* to be entered upon the minutes of the board of supervisors, the amount to be raised for the various school districts must necessarily be included, even though the board has no power to change these estimates in the final adoption of the budget. As we have repeatedly said, the purpose of the budget law was as much to apprise the taxpayers of the extent of the obligations which would be incurred during the ensuing year, and which they would be obliged sooner or later to meet, as to enable them to protest any item of expense. The cost of the schools of the state comprises one of the largest items of our annual tax bill. If indebtedness without limit, and without notice to the taxpayers, can be incurred for this purpose, as was the custom with counties and municipalities before the adoption of the budget law, the beneficent purposes of the law would be to a great extent defeated.

██ We are of the opinion that the final budget adopted by the board of supervisors for school purposes is included in the "estimate" referred to in section 3098, *supra,* notwithstanding that it has no power to change such budget from the estimates submitted to it by the county school superintendent, and that it is the obvious intent of the legislature that the limitations of the budget law in regard to amounts expended and the obligations to be incurred apply to school districts in the same manner as it does to general county and municipal expenditures. The trial court properly

held that the decision in *City of Phoenix* v. *Kidd, supra,* applied to the present case so far as the budget law is concerned.

But, says plaintiff, even if this be true so far as the tax receipts of the current year are concerned, it appears from the facts that there was a considerable surplus at the end of the current year composed in part at least of accumulations of savings from previous years, and that under our decision in *Batterton* v. *Pima County,* 34 Ariz. 347, 271 Pac. 720, and *Bank of Lowell* v. *Cox,* 35 Ariz. 403, 279 Pac. 257, such funds may be used for any legitimate purpose without violating the budget law. There would be much force to this contention were it not for the provisions of chapter 4 of the first special session of the 12th legislature. This chapter amended section 1026, Revised Code of 1928, which governs the purpose for which school money may be used, and reads, so far as material, as follows:

" . . . If a balance remain in the school fund of a district after payment of all outstanding warrants and the expense of maintaining school for a period of eight months during the school year has been paid, such balance may be expended for repairing the school house or improving the school grounds, or in the purchase of school furniture, fixtures, equipment and supplies, . . . "

This is an express limitation upon the purpose for which surplus funds of a school district may be used after the expenses of current operation are paid, and it does not include wages for services like those performed by plaintiff. He, therefore, is not entitled to the payment of his claim from any surplus funds of the district.

The judgment of the superior court of Maricopa county is affirmed.

ROSS, C. J., concurs.

McALISTER, J. (Specially Concurring).—The opinion of the majority is based upon the holding in *City of Phoenix* v. *Kidd,* 54 Ariz. 75, 92 Pac. (2d) 513, and Id., 54 Ariz. 123, 94 Pac. (2d) 428, that the budget law stood in the way of judgment for plaintiff in that case. While I do not agree with the views expressed in that opinion, but still adhere to those contained in the dissent, they are the law of this state and will so remain until changed or modified by the court or by statute. I, therefore, concur upon the ground of *stare decisis.* The holdings that the budget law applies to school districts and that balances at the end of the school year may be paid only for those purposes enumerated in the statute are, I think, correct.