[Civil No. 4402.   Filed January 26, 1942.]

[121 Pac. (2d) 433.]

P. T. COLEMAN, Appellant, v. A. H. LEE, JAMES
S. SHREEVE, D. T. BENCHOFF, LELAND D.
CARMACK, and JOHN GREER, as Treasurer
of Apache County, Arizona, Appellees.

Mr. W. Dean Nutting, Mr. Don T. Udall and Mr. F. Ray Brown, for Appellant.

Mr. J. Smith Gibbons, for Appellees.

ROSS, J.—This is an action by P. T. Coleman, a taxpayer of Apache County, against A. H. Lee, James S. Shreeve and D. T. Benchoff, members of the board of supervisors of said county, John Greer, treasurer thereof, and Leland D. Carmack, to recover money alleged to have been illegally paid, or to enjoin its payment if not paid, to defendant Carmack for services rendered by Carmack in connection with the administration, hospitalization and medical care of the indigent sick of the county.

The cause of action is set forth in twenty-two counts, each count being for a monthly or semi-monthly payment made, or to be made, to Carmack

(for the period from April, 1938, to October, 1939), and for 40% thereof for attorney's fees.

Plaintiff demanded of the county attorney that he bring the action and, upon a failure of such officer to comply with his demand within the time fixed by law, filed the action in his own name (December 18, 1939), which he is authorized to do upon compliance with section 17–326, Arizona Code 1939. Such section also provides that if he prevails he shall be entitled to costs and "a reasonable attorney fee not to exceed forty (40) per cent of the amount recovered or saved to the county." The right of action exists by virtue of statute and is maintainable only when the board of supervisors pays out money "without authority of law." Section 17–325.

Judgment went in favor of defendants and plaintiff has appealed.

It is first contended by him that the county budget for the years involved (April, 1938, to October 2, 1939, inclusive) made no provision to pay for services rendered in the administration of such relief as hospitalization and medical care of the county's indigent sick. The basis of this contention is that the budget item for "indigent sick" is a lump sum and not broken down as $—— for hospitalization, $—— for medical care, $—— for nursing, $—— for investigation of indigent claimants, etc. It is insisted that in *Bank of Lowell* v. *Cox,* 35 Ariz. 403, 279 Pac. 257, and in *Maricopa County* v. *Armstrong,* 42 Ariz. 317, 25 Pac. (2d) 1023, this court held that the budget should be broken down and that disbursements should correspond with its several items. In those cases we did hold that where the legislature or the board of supervisors had appropriated money and designated the object or officer for which it was to be used, it could not be used for something or some officer dif-

ferent than the legislative or supervisorial designation. We did not hold, for the question was not involved, that an item, as for instance, for the county indigent sick, could not be legally made in a lump sum and broken down later by those authorized to expend it. In *State Board of Health* v. *Frohmiller,* 42 Ariz. 231, 23 Pac. (2d) 941, a lump sum appropriation to an officer or department was upheld, the court saying it could be apportioned by the head of the office or department, and we see no reason why the board of supervisors could not make the appropriation in the budget in a lump sum, leaving to those whose duty it is to spend such sum the power and right to apportion it as the law permits.

■ It is next contended by plaintiff that the money paid Carmack was for a purpose not authorized by law. When applicants for indigent relief filed their claims with the board of supervisors, it was the duty of the board to investigate such claimants and determine whether they were entitled to relief under the law, and, in doing so, it was necessary for the board's agent in some cases to travel by automobile to distant parts of the county. This Carmack did, furnishing his own transportation. The board of supervisors paid for such services and it is the moneys so paid that are involved in this litigation. The money, without question, was spent for a purpose authorized by law. It was to the interests of the county to find out whether applicants for relief were worthy under the law or whether they were ''fakes,'' and investigation to determine that fact was as necessary as medical aid, nursing, etc.

There is no suggestion that the board of supervisors acted otherwise than in perfect good faith in engaging Carmack to make investigation of applicants for indigent sick aid, or that he did not make such

investigations, or that the amount paid him was excessive. In such circumstances, as was said in *Batterton* v. *Pima County,* 34 Ariz. 347, 271 Pac. 720, 722:

"The sole question is whether or not the purpose for which the money was paid out was one authorized by the statute. If it was, no suit can be maintained under paragraph 2442, *supra.*" (now section 17–325.)

There might be some other remedy under different statutes or the common law, as stated in said case, but not the statutory action under section 17–326, *supra.*

In *Maricopa County et al.* v. *State et al.,* 51 Ariz. 372, 77 Pac. (2d) 212, and *Mahoney* v. *Maricopa County,* 49 Ariz. 479, 68 Pac. (2d) 694, we held, in discussing the state and county boards of social security and public welfare, that the power of boards of supervisors of counties to spend money for public assistance to the needy of any class or in any manner had been taken from them under the new setup contained in Chapter 69, Laws of 1937 (now sections 70–101 to 70–118, Arizona Code 1939, as amended) and that such power had been transferred to the state and county boards of social security and public welfare, and that the county boards, acting under the direction and control of the state board, were the local agent in that connection. However, we do not believe it was intended that said act should interfere in any manner with the power of the board of supervisors to appropriate and spend money for the protection of the indigent sick of the county. This is one segment of the public relief that is still left to the county. The legislature has acted upon the assumption that the duty of caring for the indigent sick is a county matter, for it has made it the duty of the board of supervisors (in section 17–403)

"to include in its annual budget and tax levy for county purposes, such amount as it shall deem necessary and adequate for the hospitalization and medical care of the indigent sick in such county."

Indeed, such power is expressly reserved to the counties as is shown in section 17–401 reading:

"*Boards of supervisors to provide hospitalization and medical care of indigent sick.* The boards of supervisors in each county of the state shall have the sole and exclusive jurisdiction to provide for the hospitalization and medical care of the indigent sick in such county, except in the case of the state welfare sanitarium, which shall be operated solely by the state board of social security and welfare."

Defendant Carmack, at the times he was paid the sums in controversy, was the secretary to the county board of social security and public welfare and was appointed such secretary under the provisions of section 70–110 (sec. 10, Chap. 69, *supra*) reading, so far as material, as follows:

"70–110. *County boards.* (a) . . . The members of each county board shall serve without pay, except that they shall receive necessary traveling expenses while in the discharge of the duties imposed upon them by the state board.

"(b) The several county boards shall be under the direct supervision and control of the state department, and shall perform such duties as may be prescribed by the state board.

"(c) It shall be the duty of the county boards to assist the state department in the administration of welfare and relief work in their respective counties; to keep the state department fully informed with respect to social welfare conditions therein; to cooperate with local private relief, welfare, and charitable organizations; to advise county and municipal authorities on questions of welfare, relief, distribution of funds, and social security, and generally, with the approval of the state board, to do things neces-

sary and proper, within their respective jurisdictions, to carry out the purposes of this act.

"(d) Members of the county boards shall, immediately after this appointment, organize by the selection of a chairman. Each county board may employ a full time secretary, who shall maintain an office in the county seat in quarters assigned or provided by the board of supervisors, and such other employees as may be necessary for the discharge of the duties of the board."

■■ Plaintiff next contends that Carmack was a regular full-time employee of the county board of social security and public welfare and that his salary was all that he was lawfully entitled to receive. He bases this claim upon the provisions of section 12–709, reading:

"*Legal salary only to be received and in full, payable semi-monthly.*—The salaries provided in this chapter shall be in full compensation for all services rendered by any officer, deputy or assistant. Salaries shall be paid twice in each month on regular days not more than sixteen (16) days apart. All state or county officers, employees, members of boards and commissions not mentioned in this chapter, and all deputies, stenographers, clerks and employees of any officer, board or commission, or of any institution, shall receive the salary provided by the laws creating or authorizing their respective positions, and shall not, under any pretext, receive any salary or emolument in excess of the salary so provided by law."

The law creating or authorizing the position of secretary to such board does not provide for his salary in terms nor by reference to any other statute. As a matter of fact, it appears he was paid his salary by the state board of social security and public welfare, and we presume such board fixed the amount thereof. The terms of section 12–709 do not cover Carmack's position. The law creating or authorizing the position (section 70–110, *supra*) does not provide what

his salary shall be. He was not an employee of board of supervisors of Apache County. His employer, whether the county or the state board, had no jurisdiction over the administration of the county's indigent sick funds, such jurisdiction being exclusively in the board of supervisors. We do not think that Carmack, by virtue of his position as secretary of the county board of social security and public welfare, was under any obligation to render to the board of supervisors the service of investigating its applicants for relief to determine whether they were actually sick and indigent. That duty devolved upon the board of supervisors and its agents.

Plaintiff refers to subsection (c) of section 70–110, *supra,* as requiring the county board of social security and public welfare to render the service Carmack performed for the board of supervisors. But we think a careful study of such subsection clearly shows that the reason for making it the duty of the county board of social security and public welfare "to advise" county and municipal authorities on questions of welfare, etc., was "to carry out the purposes of this act," that is, Chapter 69, Laws of 1937.

The only restriction at common law on a public officer in the matter of accepting and performing official duties other than those of his office is that they be not incompatible with the duties of his office. Here the duties performed by Carmack for the County of Apache were not only not incompatible with his regular employment but similar to the duties his regular position required him to perform, and we know of no constitutional or statutory law prohibiting him from performing such service and accepting compensation therefor. Section 17, part 2, article IV of the Constitution, which prohibits increasing the salary of a public officer during his term, does not ap-

ply because the secretary to the county board has n◖ fixed term under the statute creating the office. Sec◖ tion 70–110, *supra.*

We have arrived at the conclusion that the judg‐ ment of the lower court should be affirmed, and it is so ordered.

LOCKWOOD, C. J., and McALISTER, J., concur.