[Civil No. 4460. Filed March 23, 1942.]

[123 Pac. (2d) 827.]

PRIME T. COLEMAN, Appellant, v. DODD L. GREER, D. T. BENCHOFF, A. H. LEE, JAMES S. SHREEVE, Appellees.

Mr. F. Ray Brown, of Salt Lake City, Utah; Mr. W. Dean Nutting and Mr. Don T. Udall, of Holbrook, Arizona, for Appellant.

Mr. J. Smith Gibbons, for Appellees.

LOCKWOOD, C. J.—Prime T. Coleman, plaintiff, has appealed from a judgment in favor of Dodd L. Greer, and D. T. Benchoff, A. H. Lee and James S. Shreeve, as supervisors of Apache county, defendants.

The facts are not seriously in dispute, and may be stated as follows: In 1937 an action was instituted by Earl Platt, the then county attorney of Apache county, on behalf of the Apache County High School Board and the Northern Arizona Utilities Company against Byron F. Hunter, the then treasurer of Apache county, seeking to compel him to pay a warrant drawn upon him by the high school board. The board of supervisors employed defendant Greer to defend the action on behalf of the treasurer. The case eventually came to this court and we sustained the defense of the treasurer. Greer was paid $350 for his services from the general funds of Apache county, by order of the supervisors. Sometime after this payment, the treasurer, acting under the instructions of the school board, reimbursed the general fund of Apache county aforesaid from the funds of the Apache county high school district. Sometime after such reimbursement, this action was brought by plaintiff, under the provisions of sections 17–325, 17–326, Arizona Code 1939, which read, respectively, as follows:

"*Liability for money illegally paid—Action.*—Whenever a board of supervisors shall, without authority of law, order any money paid out of the county treasury for any purpose, such supervisors and the party in whose favor such order was made, shall be liable for such money with legal interest, and twenty (20) per cent additional on such money. The county attorney of such county shall institute an action in the name of his county against such supervisors and others liable, to enjoin the payment of such money, or if the same has been paid, to recover it with legal interest, and twenty (20) per cent additional thereon, to be

paid into the county treasury to the credit of the fund from which the allowance was made. The board may not dismiss, compromise or in any way control such action, and no bond shall be required of a county in such action, or to obtain an injunction, or an appeal.''

''*Action by taxpayer.*—If any county attorney for twenty (20) days after written request made by a taxpayer of the county, fail to institute such action then any taxpayer of such county may bring such action in his own name and at his own cost, with the same effect as if brought by the county attorney; provided, the person instituting such action shall execute a bond with two (2) or more sureties, made payable to the defendant conditioned that if the plaintiff fails to prosecute such action with diligence and to effect, that the plaintiff will pay all damages sustained by the defendant by reason of such action and all costs incurred therein. If such taxpayer prevail in such action the court shall allow such taxpayer costs and a reasonable attorney fee not to exceed forty (40) per cent of the amount recovered or saved to the county.''

The basis of the action was twofold, (a) that the board of supervisors is not authorized by law to employ counsel to represent the county treasurer in an action to which the county and/or the board of supervisors is not formally a party, and (b) that even assuming the circumstances of the case were such that it were authorized to employ special counsel, there was no fund from which payment for such services could legally be made, because there had been no provision therefor in the budget of the year during which it was paid.

The two questions thus presented are interesting ones, but we think it is apparent upon the record that we need not, and should not, consider either one. The evidence shows affirmatively that before this action was brought, the county funds had been fully reimbursed for the amount paid to defendant Greer.

■■ The action granted by sections 17–325, 17–326, *supra,* is a highly penal one and should not be extended beyond their reasonable terms. The gist of the action is to recover for the county money which has been illegally paid from the county funds *by order of the board of supervisors.* If the money which is alleged to have been so illegally paid is restored to the treasury before the commencement of an action, the purpose of the law has been satisfied, and certainly the county could not recover the same sum a second time.

It doubtless will be urged that the repayment of the money was merely a transfer from one county fund to another, made without authority of law, by the treasurer. This involves a consideration of the nature of the funds·of the Apache county high school district. The treasurer is, by statute, made *ex officio* custodian of these funds, and must keep them in a fund separate from all others. He must pay warrants therefrom solely on the order of the county school superintendent. *Hunter* v. *Northern Arizona Utilities Co.,* 51 Ariz. 78, 74 Pac. (2d) 577. The only connection which the board of supervisors has with school funds is to levy a sufficient tax each year to raise the amount of money designated by the county school superintendent. Section 54–605, Arizona Code 1939. And this money is not county money. Neither the board of supervisors nor the county itself has any ownership of or control over the high school funds, and their expenditure is determined solely by the trustees of the district and the county superintendent.

■ It may be that the treasurer was not authorized, as a matter of law, to use any of the Apache county high school district funds to reimburse the county. That, however, is a matter which cannot be

determined in a proceeding of this nature, but only by a proper action against the treasurer.

The judgment of the superior court of Apache county is, therefore, necessarily affirmed.

McALISTER and ROSS, JJ., concur.