[Civil No. 4634. Filed June 11, 1945.]

[159 Pac. (2d) 603.]

A. H. LEE and JAMES S. SHREEVE, Appellants, v. P. T. COLEMAN, Appellee.

Mr. J. Smith Gibbons, for Appellants.

Mr. M. V. Gibbons, for Appellee.

LaPRADE, J.—The appellee P. T. Coleman instituted an action in the lower court to recover a money judgment from the appellants Lee and Shreeve for and on behalf of the County of Apache. The defendants below were then or had been supervisors of Apache County. The action was brought by the plaintiff in his

capacity as a taxpayer under the provisions of Sections 17–325 and 17–326, Arizona Code Annotated 1939. In addition to the appellants, a Mr. R. F. Lilley and a Mr. D. T. Benchoff were also named as defendants. These two last-named individuals had been members of the board of supervisors during a portion of the time involved in the proceedings. At the conclusion of the trial, judgment was ordered for the defendants Lilley and Benchoff, from which judgment no appeal was taken.

As a predicate for plaintiff's right to institute the action in his capacity as a taxpayer for and on behalf of the county, plaintiff served a demand on the county attorney to bring the action. His demand, in part, reads as follows:

"I request hereby that you file suit for the collection of all money paid out, without authority of law, by order of the County Board of Supervisors, against the party receiving said money and the Supervisors who ordered the disbursement of said funds, and their respective Bonding Companies; which unlawful expenditures are more particularly described as follows, to-wit:

"1. All monies paid to James Shreeve for mileage, subsistence and railroad fare from June 6, 1935, to date, and especially those expenditures listed on pages 49 to 50 of the State Examiner's Audit Report of Apache County, covering the period of June 1st, 1935, to June 30, 1938.

. . . . . . . . . . .

"8. All monies paid to A. H. Lee for traveling expenses, subsistence and railroad fare from June 1, to 1935 to date ——.

"Very truly yours,
"P. T. Coleman."

The authority to serve this demand is found in Sections 17–325 and 17–326 referred to above. These two sections at the time the action was instituted read as follows:

"17–325. *Liability for money illegally paid—Action.*
—Whenever a board of supervisors shall, without authority of law, order any money paid out of the county treasury for any purpose, such supervisors and the party in whose favor such order was made, shall be liable for such money with legal interest, and twenty (20) per cent additional on such money. The county. attorney of such county shall institute an action in the name of his county against such supervisors and others liable, to enjoin the payment of such money, or if the same has been paid, to recover it with legal interest, and twenty (20) per cent additional thereon, to be paid into the county treasury to the credit of the fund from which the allowance was made. The board may not dismiss, compromise or in any way control such action, and no bond shall be required of a county in such action, or to obtain an injunction, or on appeal."

"17–326. *Action by taxpayer.*—If any county attorney for twenty (20) days after written request made by a taxpayer of the county, fail to institute such action then any taxpayer of such county may bring such action in his own name and at his own cost, with the same effect as if brought by the county attorney; provided the person instituting such action shall execute a bond with two (2) or more sureties, made payable to the defendant conditioned that if the plaintiff fails to prosecute such action with diligence and to effect, that the plaintiff will pay all damages sustained by the defendant by reason of such action and all costs incurred therein. If such taxpayer prevail in such action the court shall allow such taxpayer costs and a reasonable attorney fee not to exceed forty (40) per cent of the amount recovered or saved to the county."

The complaint contains four causes of action; two against Shreeve, and two against Lee. Judgment was recovered on each of the counts, including an additional award for attorney fees. No award was made of the 20 per cent penalty provided for in Section 17–325. We are not able to discover from the record why the additional 20 per cent was not allowed. The complaint alleged that Lee and Shreeve were the recipients of certain monies alleged to belong to the county and

which had been, without authority of law, paid to them. Recovery was also sought against the other supervisors who were not the recipients of the money but who, it was claimed, had approved and ordered the money paid out. The evidence showed that the claims had been audited and allowed by the county recorder by the authority of Section 17–324, Arizona Code Annotated 1939. It was for this reason that judgment was rendered in favor of the several supervisors who were not charged as being recipients of any money and whose liability was predicated upon the charge that they had ordered the money paid out. The several causes of action were founded upon the issuance and payment to Shreeve or Lee of some 105 individual warrants. The basis for the issuance of the warrants was claims for reimbursement for monies alleged to have been expended by appellants for travel and subsistence in the prosecution of the county's business.

The grounds on which plaintiff based his cause of action were:

(1) That the claims were not legal claims against the County of Apache.

(2) That the monies were illegally paid out of the county treasury without authority of law.

(3) That there was no authority in law for the payment of the claims.

(4) That the payments were not provided for in the proper annual budgets.

For the fiscal year ended June 30, 1936, the supervisors adopted a budget which contained the following items: ''Travel Expense in the Board of Supervisors' Office—$1,000. Roads and Bridges—$3,500.'' For the fiscal year ended June 30, 1937, the following items appear in the budget: ''Travel, Office, and Miscellaneous Expenses in the Office of the Board of Supervisors—$1,200. Road Fund—$9,400.'' This last item was broken down and contained an item designated ''Administration and Transfers—$1,000.'' For the

fiscal year ended June 30, 1938, the budget contained the following item under the designation: "Board of Supervisors, Travel, Office, and Miscellaneous— $1,800." Under the road budget there was an item for "Administration and Transfers—$900." For the fiscal year ended June 30, 1939, under the budget for the board of supervisors, there appeared an item: "Miscellaneous, Travel, and Office Expense—$2,000." For the road fund there was an item set up of $20,699, with no itemization. For the fiscal year ended June 30, 1940, under the subdivision for the board of supervisors, there was set up an item: "Board of Supervisors, Office, Travel, and Miscellaneous—$2,000." For the road fund there was set up $20,800, without any itemization.

The evidence disclosed that Shreeve and Lee had incurred expenses in traveling about the county caring for county roads and bridges. Some of the claims grew out of travel and subsistence expense incurred in attending conferences with other boards of supervisors throughout the state, with State Highway officials, and U. S. Forest officials charged with the maintenance and construction of highways on government-owned forest lands. When they traveled in this behalf, they presented the claims referred to in the four causes of action, which after approval were drawn against and paid from the county road fund rather than against the travel and expense item which had been set up in the budget of the board of supervisors. The gist of plaintiff's complaint is that the expenditures itemized in the complaint and for which warrants were drawn and paid were illegal for the sole and only reason that they were not paid out of the fund expressly budgeted and labeled as "Travel Expenses of Supervisors," but were allowed and paid out of the fund labeled "Road Fund."

It is contended by the apellants that for each of the fiscal years there were sufficient monies budgeted in

the supervisors' travel account to have paid the claims had they been drawn and charged to the supervisors' travel account. A minute analysis of the claims may disclose that in at least one fiscal year there was not a sufficient sum of money in the supervisors' travel account to have paid all of the claims for travel and subsistence that were actually paid.

We will now consider the various assignments of error and contentions of the appellants. Appellants' first assignment of error is that the plaintiff had no authority to institute the action, and that as a consequence the court was without jurisdiction to hear and determine the case. Appellants' second assignment of error asserts that no proper demand was made upon the county attorney as a predicate for plaintiff's right as a taxpayer to institute the action. We shall dispose of these two assignments together. To do this we must have recourse to several of the code sections relating to the duties of the board of supervisors, presentation, allowance, and payment of claims against the county.

Section 17-316, Arizona Code Annotated 1939, states:

"No payment shall be made from the treasury of the county except upon demand duly presented and allowed. Every person having a claim against a county, shall, within six (6) months after the last item of the account accrues, present a demand therefor, in writing, to the board of supervisors of the county against which such claim or demand is held, verified by the affidavit of himself or agent, stating minutely what the claim is for, and specifying each item and the date and amount thereof, and that the claim and each item thereof is justly due. The board shall not consider any claim unless such demand thereof is presented within such time. Compensation due to jurors and witnesses, and official salaries shall be paid without the presentation of such claim."

Section 17-701, relating to the duties of the county treasurer, in part, provides:

"The county treasurer shall:

. . . . . . . . . .

"5. Disburse the county money only on county warrants, issued by the board of supervisors, signed by the chairman and clerk of such board, or as provided by law."

Section 17–322, relating to the issuance of county warrants, reads as follows:

"Warrants drawn by the supervisors on the county treasurer for the current expenses during each year must specify the liability for which they are drawn, and when they accrued, and must be paid in the order of presentation to the treasurer. If the fund is insufficient to pay any warrant, it must be registered, and thereafter paid in the order of its registration."

Section 17–309 enumerates the powers of the board of supervisors. Subsection 22 thereof provides as follows:

"Do and perform all other acts and things necessary to the full discharge of the duties as the legislative authority of the county government; but a supervisor shall not vote upon any measure in which he, or any member of his family, or partner, may be pecuniarily interested;"

Section 17–324 provides the method for the allowance of a claim of an individual supervisor against the county. This section reads as follows:

"Claims against the county presented by members of the board of supervisors must be verified as other claims, and they shall be audited, allowed or rejected by the county recorder."

In the case at bar it will be noted that the demand served by the plaintiff upon the county attorney requested the county attorney to "file suit for the collection of all money paid out, without authority of law, *by order of the county board of supervisors,* against the parties receiving said money and the supervisors who ordered the disbursement of said funds."

As above stated, the claims sued on were presented to the county recorder by the direction contained in Section 17–324, *supra,* and they were audited and allowed by the county recorder. An examination of the individual claims indicates that at the time they were presented by the claimant no specification was therein attempted as to which particular fund they were drawn against. Apparently, after the claim was presented, audited, and allowed, the clerk of the board of supervisors endorsed on the back of the claim the words "Road Fund," indicating that the claim was to be paid out of the road fund, and he also endorsed thereon the number of the warrant that he, as clerk, drew in payment of the claim. Each claim, in turn, was signed by the clerk and chairman of the board of supervisors. We are not here particularly called upon to determine whether or not these monies were paid out *by the order* of the board of supervisors. As above disclosed, judgment was granted in favor of the supervisors who were alleged to have approved the claims and no appeal was taken from this judgment. The plaintiff was content not to attempt to pursue any persons other than the recipients of the monies. As was pointed out by this court in the case of *Avery* v. *Pima County,* 7 Ariz. 26, 60 Pac. 702, paragraph 383, R. S. A. 1887, as amended by Art. 34, Acts 1893, now section 17–325, Arizona Code Annotated 1939, in addition to allowing a recovery against the recipient of any monies paid out of the county treasury without authority of law, also allows a recovery against the individual supervisors who may have ordered the money paid out. The Act as originally passed and as contained in paragraph 383 of the Revised Statutes of the Territory of Arizona 1887, permitted a recovery only against the recipient of any county monies paid out without authority of law. At no time since 1887 has it been possible for the recipient of county monies paid out without authority of law to retain the same. *Webster* v. *Parks,* 17 Ariz. 383, 153 Pac.

455. By the provisions of paragraph 383, R. S. A. 1887, it was the duty of the district attorney to institute suit for recovery. In the 1893 amendment, the provision was incorporated whereby a taxpayer was authorized to bring the suit for and on behalf of the county in the event the district attorney did not bring the suit within twenty days after demand. It may be as contended, that the act of the board of supervisors in ordering these warrants issued was merely a ministerial act after the claims had been audited and allowed by the county recorder. The words "whenever a board of supervisors shall, without authority of law, order any money paid out" are of no import in an action against the recipient of the money. They are of the essence only when an action is prosecuted against a supervisor who has ordered the money paid out and is not the recipient of such money. We conclude that the plaintiffs demand was sufficient, and that upon the refusal of the county attorney to institute the action, the plaintiff was authorized to file the complaint. The contention that the court had no jurisdiction for the reason that the plaintiff was not the proper party plaintiff thus falls.

To obviate the contentions herein made that no cause of action could be maintained against supervisors who might be held to have only technically approved a claim and that only as a ministerial act where the claim of a fellow member of the board had been audited and allowed by the county recorder, our legislature amended Sections 17–324 and 17–325, Arizona Code Annotated 1939, by Chapter 18, Sessions Laws of 1941. These sections as now amended require that a claim presented by a board member shall bear the approval in writing of at least one member of the board other than the claimant, and of the county treasurer. In the event the money is paid out on a claim presented by a member of the board of supervisors, the supervisor presenting the claim and the supervisors and the county

treasurer approving the same shall be jointly and severally liable for the money.

Defendant's third assignment of error is grounded upon the proposition that the court erred in entering judgment for the reason that the claims presented and the warrants issued in payment thereof show on their face that the money was paid out for purposes authorized by law. Section 17–309, Arizona Code Annotated 1939, enumerates some of the powers and duties of the board of supervisors. Among other things, they are directed to lay out, maintain, control, and manage public roads; secure rights of way; provide for the construction, reconstruction, and maintenance of highways in their respective counties; and enter into contracts for this purpose with state and federal agencies. Section 12–713, Arizona Code Annotated 1939, authorizes all public officials to be paid for mileage and travel expenses in the performance of their duties. Appellants insist that the claims on their face indicate that they were for monies to reimburse them for their individual funds expended in performing the county's business under their jurisdiction, and that as a necessary consequence the allowing of the claims and the issuance of the warrants was for a public purpose and was authorized by law. No contention was made that appellants had not made the trips and expended their individual funds in connection with the county's highways. To this contention we can reply only by saying that it is not sufficient answer to say that the county received the value of the services or was unjustly enriched. A claim to be a legal claim against the county must not only be for a necessary purpose, but under our law the expense must have been anticipated and provision made therefor in the county budget, and no expense incurred or payments made in excess of the budget are legal. Section 73–502, Arizona Code Annotated 1939; *Bank of Lowell* v. *Cox*, 35 Ariz. 403, 279 Pac. 257; *Fullen* v. *Calhoun,*

39 Ariz. 40, 3 Pac. (2d) 786; *Batterton* v. *Pima County,* 34 Ariz. 347, 271 Pac. 720; *American-La France & Foamite Corp.* v. *City of Phoenix,* 47 Ariz. 133, 54 Pac. (2d) 258. The budget sections alleged to have been violated are Sections 73–502 and 73–503, Arizona Code Annotated 1939. The first section requires the board of supervisors to prepare (1) a full and complete statement of the financial affairs of the fiscal year last passed, (2) an estimate of the different amounts which may be required to meet the public expense for the ensuing year, fixing the amounts proposed for all subjects of recurring items of expense, and (3) a statement of the amount of money *required for each item of expenditure necessary for county purposes.*

The estimate shall be entered upon the minutes of the governing body and shall be fully itemized, showing under separate heads the amounts proposed as required for each department of the county, etc. It shall also show the amounts proposed for maintenance of public highways, and a full and complete disclosure and statement of the contemplated expenditures for the ensuing year, showing the amounts proposed to be expended from each separate fund. Section 73–503 provides for a public hearing on the estimated budget. It specifically provides that

" . . . the estimate as finally determined upon, shall be adopted, and *no expenditure shall be made for a purpose not included in such budget, and no debt, obligation, or liability shall be incurred or created in any year in excess of the amounts specified therein as finally adopted for each purpose therein named; . . . .*"

The two sections provide for the making of the budget, its publication, notice of public hearing thereon, and the final adoption after public hearing. The purpose of these hearings is to acquaint the taxpayers and citizens of the county with the financial needs of the county for the ensuing fiscal year as viewed by the supervisors. At such meetings taxpayers shall be

heard to make recommendations and voice protests. When a budget shall have been finally adopted, the taxpayers know how much money is proposed to be raised and the various purposes for which the money will be expended. When the supervisors incorporated in the budget an item of "Office and Travel Expense for Board of Supervisors," a taxpayer was entitled to and was lead to believe that the money set up for office expense and travel of the board of supervisors was available to the board of supervisors for the purpose of carrying out their various duties, including the supervision of highways. The taxpayer knew that no sum of money could legally be paid out by the supervisors for their travel and subsistence in managing the affairs of the county in excess of the sum provided for in the budget. In the instant case, if the supervisors were permitted to pay for their travel and subsistence expenses out of the road fund or the county indigent fund or some other county fund, then they could circumvent the positive prohibition contained in Section 73–503, and the many opinions of this court that such cannot be done would be flouted and held for naught.

Appellants call our attention to our holdings in the case of *State Board of Health* v. *Frohmiller*, 42 Ariz. 231, 23 Pac. (2d) 941, and *Coleman* v. *Lee*, 58 Ariz. 506, 121 Pac. (2d) 433. In those cases, we held that a lump sum appropriation to an officer or department was not prohibited by the budget law, and that such an appropriation could be apportioned by the head of the office or department. Appellants argue that since the budgeted appropriation to the road fund was in a lump sum, by the authority of the two cases just cited, the board was privileged to spend any portion of the road fund for road purposes. We have never held that where an appropriation was made for a department containing an itemization as (1) capital investment, (2) travel, (3) maintenance and repair, (4) salaries, etc., that the amount set up for any of the itemized

purposes could be exceeded and any excess expenditures charged against some other account. We cannot agree with the suggested interpretation of the holdings in these cases as applied to the facts before us here. The supervisors in their adopted travel budget indicated the maximum sum of money that they proposed to expend for travel in the performance of their duties. The legal presumption flowing therefrom was that the funds provided for travel would be sufficient and that the budgeted amount constituted the maximum sum that could legally be expended for travel and subsistence.

 In the furtherance of justice, we conclude that the claims lodged against and paid out of the road fund in the several fiscal years should have been charged against the travel expense item in the supervisors' budget. The evidence *apparently* discloses that in all of the fiscal years except one there were sufficient monies left at the end of each fiscal year in the supervisors' travel account to have paid all the travel claims presented in the several fiscal years. We conclude that the trial court was in error in not permitting the appellants to debit the supervisors' travel account and to credit the road fund in a like sum insofar as there were funds available in the travel fund against which charges could be made. This would entail only a matter of making the proper debits and credits and would result in no financial loss to the county. In the particular fiscal year (or years?) in which the total expenditures for travel and subsistence exceeded the budgeted item for travel available to the board of supervisors for that particular year, recovery may be had with interest, plus the 20% penalty and attorney fees as provided for in Section 17–325.

 In view of our determination that a new trial must be had, we believe it advisable to consider the ruling of the trial court to the effect that the supervisors were without authority to incur travel expense

beyond the boundaries of the county. We are unable to discover any prohibition against the incurring of such expenses. Section 12–713, Arizona Code Annotated 1939, contemplates that public officials may be required to incur travel expense in performance of their official duties. Obviously there can be no reimbursement for monies expended for travel and subsistence if no official duties were in fact performed. The place and purpose of the trip are proper subjects of judicial inquiry. *Kerby* v. *State ex rel. Frohmiller,* 62 Ariz. 294, 157 Pac. (2d) 698. In the case at bar there had been no previous authorization by the board to incur the expense. Only the board members could determine the necessity or advisability of making such trips and incurring such expense. The county recorder, not being the manager of the county's affairs, certainly could not be presumed to know the necessity or advisability of making the trips. The county recorder in auditing the claims was charged with the duty of determining whether or not each claim showed on its face that it was for a public purpose, that the expense had been anticipated and provided for in the budget, and that there were sufficient funds in the office of the county treasurer with which to pay the claim. Appellants have called our attention to the principle of law set forth in 20 C. J. S., Counties § 129, p. 941, which reads as follows:

"In the absence of statutory authorization, a county officer is generally not entitled to reimbursement for expenses incurred by him in the performance of his official duties. In most jurisdictions, however, it is held that a proper interpretation of the statutes authorizes the payment of necessary incidental expenses of county officials, such as postage, stationery, mileage, and kindred expenditures, from the county funds, and it has been held, without reference to statute, that a county officer is entitled to reimbursement for reasonable expenses for office rent, light, and janitor serv-

ice, where the county has failed suitably to provide therefor. . . . ''

This court has approved this general proposition. In the case of *Reilly* v. *County of Cochise*, 5 Ariz. 380, 53 Pac. 205, 207, there appears this statement:

"The demurrer was also properly sustained to the second cause of action for the reasons: First. The payment to the clerk does not appear to have been authorized by the board of supervisors, or subsequently ratified as a payment for and in behalf of the county, . . . .''

The act of the board in incorporating the demands paid to its members in the minutes of its regular meeting and the publishing of the same in the county as provided by law, together with the presentation of the warrants signed by the chairman and clerk of the board, constituted a sufficient ratification of the incurring of the expense.

The judgment appealed from is reversed and the cause remanded for further proceedings in accordance with the views herein expressed.

STANFORD, C. J., concurs.

NOTE: Justice MORGAN having disqualified, the Honorable J. W. FAULKNER, Judge of the Superior Court of Mohave County, was called to sit in his stead.

FAULKNER, Superior Judge (Dissenting).—In the main, I concur with the conclusions set forth in the majority opinion; but in one important matter, it is so contrary to my conceptions of law, logic, equity and sound public policy, that I am constrained to submit a dissenting opinion. It is my view that the judgment of the lower court should be reversed in its entirety, with costs to the appellants, instead of being remanded for a new trial, with what is tantamount to an instruction to hold appellant supervisors for designated parts

of the claims sued upon, and for an additional twenty per cent penalty.

As stated in the majority opinion:

" . . . The gist of the plaintiff's complaint is that the expenditures itemized in the complaint and for which warrants were drawn and paid were illegal for the sole and only reason that they were not paid out of the fund expressly budgeted and labeled as 'Travel Expenses of Supervisors,' but were allowed and paid out of the fund labeled 'Road Fund.' "

The travel expense items for which a refund is sought from the appellants, were paid to them over a period of four years. The record indicated that the combined payments for travel expense from the two funds, never at any time exceeded the total amount set up in the fund labeled "Travel Expenses of Supervisors," except during one year. The effect of the majority opinion is to hold the appellants for this excess, with all attached penalties, but to hold valid the payments made from the Road Fund, so long as the combined payments from that fund and the fund designated "Travel Expenses of Supervisors," did not exceed the total amount budgeted for the latter.

It apparently is conceded by all the parties concerned, that all the items for traveling expenses of the supervisors which were allowed and paid from the Road Fund during the period involved in this action, were paid for traveling expenses actually incurred by the supervisors in the performance of their statutory duties in supervising and managing the roads of their county, and in attending meetings having to do with the road affairs of the county. The original claims and warrants which were exhibits in the lower court, and also in this court, show on their face that they were for such traveling expenses. It also apparently is conceded by all parties concerned, and by the majority opinion of this court, that such travel expenses would have been absolutely legal in every respect, if they

had been charged to an account expressly labeled
"Travel Expenses of Supervisors."

Under the provisions of Arizona Code Annotated
1939, Section 17–309, subd. 4, it is the duty of the super-
visors to "Lay out, maintain, control and manage pub-
lic roads, ferries and bridges within the county . . . ."
It is a matter of common knowledge among taxpayers,
that such are the duties of the supervisors, and that
traveling expenses must necessarily be incurred in
the performance of such duties.

The record shows that for the year when this excess
payment was made, the Road Fund budget included
an item designated as "Administration and Trans-
fers." The purpose of the Budget Law, is two-fold,
as this court has pointed out on a number of occasions.
The first purpose is to apprise the taxpayers of the
amounts and purposes of the expenditures which the
supervisors propose to make during the ensuing fiscal
year. The second is to give taxpayers an opportunity
to object, either to the amounts or to the purposes of
such proposed expenditures. After the taxpayers have
exercised their statutory privilege of objecting to any
proposed expenditures, the supervisors may in their
discretion, either follow or disregard any suggestions,
or objections. Any taxpayer with enough intelligence
to be interested in the budget in the first place, should
know that an item designated in the Road Budget as
"Administration and Transfers," could and probably
would include traveling expenses in connection with
the supervision and administration of the roads of the
county. I find nothing in our statutes furnishing what
appears to me to be a sound basis for the conclusion
of the majority of this court, that the establishment
by the Supervisors, of a general budget for traveling
expenses, precluded them from paying the traveling
expenses connected with a particular department—
the road department or any other county department—
from a special fund set up in such department, and

64

designated therein by any appropriate language, indicating the general purpose for which it is to be used. If the item in the Apache County Road Budget designated as "Administration and Transfers," did not convey to the taxpayers of that county, the idea that some of such fund might be applied to traveling expenses incurred in supervising the public roads, then what would or could they understand to be the intended application of that item? Under the situation disclosed by the record I see no ground for saying any taxpayer was deceived or misled.

The inhibition of the statute, Arizona Code Annotated 1939, Section 73–503, as amended by Laws of 1943, Chapter 48, is:

". . . no expenditure shall be made for a purpose not included in such budget, . . . "

As I read the Budget Statute, there is nothing in it which will, after an item for a specific purpose has been set up for one department, prevent the inclusion of a like item in the fund budgeted for another department. When the supervisors established this budget item of "Administration and Transfers," thereby giving it a designation which ought to be understood by any person of ordinary intelligence, and fixing the amount thereof, they complied not only with the spirit but with the letter of the law.

It is true that the statute, Section 73–502, says:

"The estimate shall contain a statement of the amount of money required for *each item* of expenditure necessary for county . . . purposes, . . . ."

The statute elaborates further, however, by stating:

"The estimate shall be entered upon the minutes of the governing body and shall be fully itemized, *showing* under separate heads *the amounts proposed as required for each department, public office or official,* . . . showing *the amount* proposed to be expended

*from each separate fund,* and the *total amount* of proposed public expense. . . . "

In view of the context of this statute, and of the language used by this court in the cases hereinafter cited, the words "item" and "itemized," should be understood either in a generic sense, or in a detailed and particular sense, in accordance with the common sense of the factual situation involved. In other words, the legislature should be credited with that degree of common sense which will preclude the idea that it ever intended a minuteness of itemization that would paralyze the public offices and departments of the state and county governments. If the expression, "each item" is to be given the absolutely literal construction the majority of this court seem inclined to give it in this case, then it will be necessary in the preparation of the various budgets, for each officer to specify in microscopic detail, the thousand and one tools, gadgets, and supplies of every description which will be needed to carry him through the year together with the cost for each atomic item; instead of using the inclusive expression, "Office Supplies," or some other generic term which will at a glance, tell the taxpayer the purpose of the proposed expenditure. If this "each item" idea of the statute is carried out to its logical conclusion, where will the process end? As a possible aid to any one who may attempt to answer that question, I quote from DeMorgan's "A Budget of Paradoxes":

"Great fleas have little fleas upon their backs to bite
 'em,
And little fleas have lesser fleas, and so *ad infinitum.*"

I find the following expression in the opinion in the case of *Yanke* v. *School District,* 56 Ariz. 93, at page 98, 105 Pac. (2d) 966, at page 968:

"The cost of the schools of the state comprises one of the largest *items* of our annual tax bill."

The large item there referred to, necessarily included an infinite number of lesser expense items. There are few items of public expense one could think of, that could not be subdivided into smaller items.

This court has held in *State Board of Health* v. *Frohmiller,* 42 Ariz. 231, 23 Pac. (2d) 941, and in *Coleman* v. *Lee,* 58 Ariz. 506, 121 Pac. (2d) 433, 435, that it is permissible for a budget appropriation to be made in a lump sum—''leaving to those whose duty it is to spend such sum the power and right to appropriate it as the law permits.''

The board of supervisors, being the body authorized by law to administer the road fund, had the legal right to break down the ''lump sum'' item into the lesser items reasonably and necessarily included therein.

Sound public policy requires that a liberal construction be placed upon the statute, with a view to carrying out its legitimate purposes hereinbefore mentioned without unduly hampering the administration of the public offices and departments of the state and its counties. If the county supervisors are to be penalized because they fail to use the most appropriate words in the dictionary for their budget titles, even though the language used by them may clearly indicate the character of the proposed expenditure, then men who are competent and financially responsible, will shun the office, notwithstanding the munificent salary of $125.00 per month which the legislature has lavished upon ordinary members of the board and the princely stipend of $150.00 per month generously granted to the chairman. In this case, the good faith of appellants is not impugned. No peculation is charged. There is no question that the county benefited by the expenditures. It is true that this court has asserted that those things do not count when there is an unquestioned violation of the expressed terms of the budget statute. In this case, however, for the reasons I have pointed out, I am convinced that there has been no violation

of the statute. It has been the policy of this court not to uphold forfeitures and penalties, unless the law and the facts clearly require that they be exacted.

This court in *Batterton* v. *Pima County*, 34 Ariz. 347, at page 359, 271 Pac. 720, at page 724, quoted with approval from the Utah case of *Salt Lake County* v. *Clinton*, 39 Utah 462, 117 Pac. 1075, as follows:

" 'It is for money paid out by order of the Board for some purpose not authorized by law—that is, *paid out for a purpose which the law does not sanction under any circumstances*—that the members of the board are personally liable.' "

In *Webster* v. *Parks*, 17 Ariz. 383, at page 391, 153 Pac. 455, at page 458, we find the following:

"But we do not think we are required to go to the length of making the supervisors refund this sum to the county, . . . for a mere irregularity. It would be converting what the lawmakers intended to be a very salutary rule of law for the protection of the funds of the county into a severity of punishment so oppressive as to be avoided if possible."

The policy of this court is shown in the case of *Coleman* v. *Greer*, 59 Ariz. 108, at page 111, 123 Pac. (2d) 827, 828, where we find the following language:

"The action granted by Sections 17–325 and 17–326, *supra*, is a highly penal one and should not be extended beyond their reasonable terms."

I therefore dissent from that part of the majority opinion which directs a new trial and sanctions the recovery from the supervisors of any part of the travel expense involved in this action.