No. 34,612

C. E. SHOUSE, *Appellee*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF CHEROKEE, C. ARCH SMITH, as Chairman, M. E. WADE and ROBERT QUARTON, as Members, etc., *Appellees*, THE MISSOURI-KANSAS-TEXAS RAILROAD COMPANY, THE KANSAS CITY SOUTHERN RAILROAD COMPANY and GUY A. THOMPSON, as Trustee of The Missouri Pacific Railroad Company, Debtor, *Appellants*.

(99 P. 2d 779)

Opinion filed March 9, 1940.

*Don H. Elleman, Paul H. Elleman,* both of Columbus, *W. W. Brown,* of Parsons, *W. P. Waggener* and *O. P. May,* both of Atchison, *F. H. Moore, Wm. E. Davis* and *James B. McDonough, Jr.,* all of Kansas City, Mo., for the appellants.

*C. E. Shouse,* pro se.

The opinion of the court was delivered by

ALLEN, J.: The appellee, assignee of a large number of claimants, brought this action against the board of county commissioners of Cherokee county. The claims assigned were for salaries, expenses for various county officers, services and equipment for the county, election expenses, etc., all arising during the fiscal year 1938. The court granted permission to the appellants, the three railroad companies, as taxpayers, to intervene, as defendants in the action. Plaintiff recovered judgment and this appeal followed.

In the petition of appellee it was alleged that during the year

1938 certain county officers and various other claimants presented their claims to the board of county commissioners; that the claims were duly examined and audited and were found to be just, true and proper claims against the county, but that the claims were disal-: lowed by the board for the reason there was no money in the county general fund for the year 1938 to pay such claims, and that under the date of April 10, 1939, the various claimants assigned their claims to the plaintiff Shouse for collection. The plaintiff asked judgment for $14,285.48 with interest.

The answer of the board of county commissioners was a general denial.

The appellants, the railroad companies, as taxpayers, were granted· permission to intervene, and by order of the court were made defendants in the action. Separate answers were filed by the appellants.

The appellant, the Missouri-Kansas-Texas Railroad Company,· in its answer, after a general denial, set forth the assessed valuation of its property in the county and the taxes paid to the county in 1938; that its property at substantially the same valuation would be subject to assessment and taxation for the year 1939.

The answer alleged that in 1937 the county commissioners of the county adopted and published a budget for the year 1938, including a general fund itemized in twenty-nine separate budgeted items, aggregating $72,191.98; that in due time the county commissioners levied an assessment on the property of the county to raise the amount so budgeted at the maximum rate permitted by law, to wit: 1.9 mills; and secured from the State Tax Commission permission to issue a twenty-five percent additional levy, and a further additional authority for emergency warrants to the extent of twenty-five percent of the amount produced by the maximum levy; that the total rate levied by the county commissioners for the general fund for the year 1938 on the taxable property of Cherokee county was approximately 2.85 mills; that the county received in revenues from various taxation sources the amount of $72,760.97 for its general· fund, sufficient to pay the budgeted items of its general fund; but, notwithstanding the fact that the board received sufficient funds and cash with which it could pay all items of its general fund budget, the board violated the statutes of Kansas, and its legal duty in the premises, and attempted to incur obligations for services and materials not budgeted, and paid on such obligations large sums of

money in excess of the budgeted items, and diverted and shifted from one budgeted item to another in such a way that funds were dissipated and were not available for the payment of claims properly assigned to a budgeted item, and knowingly and intentionally incurred obligations in excess of the power and authority created by statute.

Defendant further alleged that while the total amount of the budgeted items in the Cherokee county general fund for 1938 was $72,191.98, the board attempted to incur obligations in the sum of $87,199.24, which was $15,007.26 in excess of any amount authorized by the laws of Kansas, and for which taxes in Cherokee county were assessed; that the county received for the general fund the amount of $72,760.97, and disbursed all of the money, leaving outstanding claims on the first day of January, 1939, against the county in the sum of $14,438.27; that the deficit of the county affairs in the general fund at the beginning of 1938 was $5,620.40; but that due to the improvident and unlawful acts of the board, the deficit was increased during the year by the sum of $8,817.87, amounting at the end of the year to $14,438.27.

The answer alleged that the board wholly disregarded the amount of the budget, illegally incurred obligations, paid out excessive amounts, shifted funds from one budgeted item to another and paid claims for the year 1937 out of the 1938 funds.

In view of the agreed statement of facts hereinafter set out, a more detailed recital of the allegations in the answer is not necessary to present the issues in the case.

Separate answers of the other appellants were filed, being in substance the same as the answer of the Missouri-Kansas-Texas Railroad Company above outlined.

The case was tried on the pleadings and the agreed statement of facts.

It was agreed that the assignment of the claims to plaintiff were signed by the various claimants and were in due form, that the claims were duly audited and presented to the board of county commissioners and were found to be proper claims against the county; that all the claims and charges were against the county general fund; that payment of the claims was refused by the board for lack of funds in the county general fund; that after the assignment to plaintiff the claims were again presented to the board and payment was again refused for the same reason. The population of the

county and the value of the tangible and intangible property therein, also the assessed value of the property and the taxes paid by appellants were agreed to and set out.

The agreement stated that in the year 1937 the county commissioners adopted and published the budget of the county for the year 1938, aggregating the sum of $72,191.98.

The agreed statement recites:

"10. That the contracts and indebtedness created for general maintenance and expense of Cherokee county for the year 1938 were not authorized by a vote of the electors of said county, and no vote was had in said county authorizing an increased levy to provide for the general expenses of said county for the year 1938; nor has provision been made for payment by the issuance of bonds as provided by law; nor has the State Tax Commission granted to Cherokee county a special dispensation exempting said county from the provisions of sections 12 to 20, both inclusive, of chapter 319, Session Laws of Kansas, 1933; nor were any expenditures made for municipally owned and operated utilities; but, said board of county commissioners did, prior to making the levy in 1937 for the taxes of 1938, secure, under section 79-1969, G. S. 1935, from the State Tax Commission permission to fix, and did fix, a levy of twenty-five percent in excess of the statutory limitation; that said board of county commissioners further secured from the State Tax Commission authority to issue, and did issue, under section 79-1967, G. S. 1935, emergency warrants for general maintenance expenses to the amount of twenty-five percent in excess of that which could be raised in said county by using the rates limited by law, and levied on the taxable property of said county a rate of approximately 2.85 mills to provide for its general expenses for the fiscal and calendar year of 1938."

The agreed statement recites that the board in May, 1939, wrote the various claimants stating that their claims against the county had been disallowed and advising an assignment of their claims to Shouse so that he could reduce the claims to judgment; that the expenses incurred—except those authorized by statute—by the various officers and agents of the county with the knowledge and consent of the board were, at the time made, deemed necessary by the board; that at the time the claims were incurred, and the claims accrued against the county, there were no funds available for the payment of such claims.

By paragraph 15 of the agreed statement it is recited that certain obligations for the year 1937 were paid from the 1938 revenues, leaving several of the funds available for the budgeted items short; and by paragraph 16 it appears that certain 1938 warrants were paid out of some item fund other than the item fund to which they were chargeable; that there was a total of $9,712.82 in warrants

paid out of some item fund other than the item fund to which such amounts were chargeable.

The agreed statement shows that the total amount of due and unpaid bills for the year 1938 to be paid out of the county general fund is $14,741.56; that there was enough revenue allocated to each budgeted item of the general fund to pay for the amount of the indebtedness budgeted.

Paragraph 21 of the agreed statement sets out the expenses incurred in 1938 in excess of the revenue depleted as a result of the payment of the 1937 obligations. Paragraph 22 shows that there was a total of unpaid claims for the year 1938 of $14,741.56, and further that there was a total of $568.99 in claims paid in excess of the budget, making a total of $15,310.55 of claims based on indebtedness incurred by the board in excess of the 1938 budget. Under paragraph 23 of the agreed statement it appears that the total cash available during 1938 in the county general fund was $78,309.14; that $78,364.92 in warrants was paid in the year 1938, and that included therein was $5,620.40 for 1937 claims and warrants and a further payment of $3,367.19 made on 1937 claims by banks; that the cash deficit on the general fund on January 1, 1938, was $149.05 and on December 31, 1938, was $204.83. It was further agreed that the appellants as taxpayers in the county would have to pay a proportionate share of any taxes due and payable as a result of a judgment in favor of the appellee.

The agreed statement of facts was the only evidence offered by the appellee. The court overruled a demurrer to the evidence, and a motion for judgment on the stipulated facts and evidence, and entered judgment for the appellee. A motion for a new trial was filed and overruled. On this appeal error is specified in overruling the motions set out above.

Appellants assert the claims sued on are illegal and void. This contention demands an examination of our pertinent statutes.

The cash-basis law (G. S. 1935, 10-1101 to 10-1122), the budget law (G. S. 1935, 79-2925 to 79-2937) and the tax-limitation law (G. S. 1935, 79-1945 to 79-1970) were enacted at the same session of the legislature. They have a common basic purpose and must be construed together. (*State, ex rel., v. Republic County Comm'rs,* 148 Kan. 376, 82 P. 2d 84.)

These statutes are to be applied in the case before us in the light of the facts disclosed by the record. A budget for the year 1938

was duly adopted, setting up a general fund with classified items on forms provided by the state tax commission. The total amount of the budget for the general fund was $72,191.28. The total cash collected and available for the payment of the general fund obliga-tions was $78,309.14. Thus the funds were ample to meet the various items of the general fund budget.

From the agreed statement of facts admitted in evidence it appears that certain obligations for the year 1937 were paid from the 1938 revenues, leaving several of the funds available for the budgeted items short; that certain 1938 warrants were paid out of some item fund other than the fund to which under the budget they were chargeable; that other obligations were incurred in excess of the depleted revenues so that there was a total of unpaid claims for the year 1938 of $14,741.56.

In this state of affairs we look first to the provisions of the budget law.

Under G. S. 1935, 79-2927, the governing body of each taxing subdivision or municipality is required to make in writing on forms prescribed by the state tax commission "a budget properly itemized and classified by funds." The budget must set out "in parallel columns all amounts and items included and to be expended for the ensuing budget year."

Under 79-2928 a financial statement is to be prepared in connection with the budget which "shall show the condition of each fund."

Under 79-2930 the levy shall not raise an amount in excess of that required by the budget nor exceed the maximum levies prescribed by law.

Under 79-2934 the budget as approved and filed "shall hereafter be declared to be an appropriation for each individual fund, and the appropriation thus made shall not be used for any other purpose."

Section 79-2935 provides:

"It shall be unlawful for the governing body of any taxing subdivision or municipality in any fiscal year to create an indebtedness in any manner, for any purpose or to approve, allow, issue, sign, attest or register any claim warrant, or other evidence of indebtedness or payment after the total unpaid indebtedness plus the warrants issued against that fund shall equal or exceed the amount provided in the budget to be spent from that fund for that budget year. Any indebtedness contracted or incurred by the governing body or any officer or officers of such taxing subdivision or municipality in excess of said amount or amounts shall be void as against such taxing subdivision or municipality: . . ."

The theory of the budget law is plain. The budget must be properly itemized and classified by funds—the levy must be made according to the various items in the budget as published, and when filed shall operate as an appropriation for each individual fund. The revenues are to be itemized and classified by funds, and are thus earmarked for a particular purpose. When so segregated the statute declares the funds "shall not be used for any other purpose." In effect the revenues so itemized and classified become a trust fund to be applied to the purpose for which it was allocated.

In the face of the explicit language of the budget law, it would be difficult to justify the action of the board in diverting the funds in the 1938 budget to the liquidation of the outstanding obligations of the year 1937, or in issuing warrants on one fund to pay any other items or obligations.

Appellee contends the claims sued on are valid. It is asserted that section 10-1113 of the cash-basis law only condemns an action *"creating* an indebtedness in excess," etc., and that similar language is used in section 10-1114 of the cash-basis law, and in section 79-2935 of the budget law. The contention is that the claims sued on were not created or incurred by the board of county commissioners, but arise by force of the statutes of the state; that the claims sued on are of two types—those of a statutory nature and those of a quasi-statutory nature. Appellee argues that those expenditures involved in the operation of county government which are directly and expressly provided for by statute, such as salaries of officers, deputies, clerks and stenographers, feeding county prisoners, expenses of the district court, vital statistics, primary and general elections, justice and constable fees in state cases, legal printing, county auditing, official bonds, probate court expenses, etc., are pure statutory obligations. That those expenditures which of necessity arise out of a function of county government which is required to be performed by state law, but for which exact manner of payment no provision is made, are quasi-statutory obligations. They are unavoidably necessary to discharge a required function. In this class is placed all necessary jail expense, necessary courthouse expenses and expense necessary in operation of sheriff's office.

Appellee quotes the various statutes of the state which provide for the payment of the salaries of the county officials and the various other items listed, and contends that these statutory and quasi-statutory expenses were not created by the county board, but were

created by the various statutes, and therefore do not fall under either the cash-basis law or the budget law. Appellee contends that any other construction would cause a breakdown and utterly paralyze the fundamental functions of the county government.

We are unable to agree with these contentions.

The board of county commissioners has no authority to pay claims or obligations of any kind except as authorized by the law of the state. The budget is an estimate of the revenues and expenditures for the ensuing year and is made up of items of expenditures to be made—all authorized by law. If we delete from the budget all obligations that arise by force of our statutes, it would be difficult to find any field whatever for the operation of the budget law.

It must follow that the theory of the appellee, that neither the cash-basis law nor the budget law applies to obligations that arise by force of a statute, is untenable.

In *State, ex rel., v. Board of Education,* 137 Kan. 451, 21 P. 2d 295, the purpose of the cash-basis law was stated:

"The act pertains to the indebtedness of subdivisions of the state authorized by law to raise money by taxation and to expend the money so raised in performing their respective governmental functions. Broadly speaking, it is designed to have such governmental units operate their respective functions on a cash basis—not to spend money they do not have or incur obligations they cannot meet promptly. Some of them, for one reason or another, had not been doing that, but had conducted their business somewhat on a credit basis. In some, proper books had not been kept, or sufficient publicity given, so that its citizens could know its financial status. It was thought waste, extravagance and an undue burden on taxpayers resulted from such methods of doing business, and the legislature deemed it prudent to change such practices and put all such governmental units on a cash basis. . . ." (p. 452.)

The purpose of the cash-basis law and the budget law is to prevent a deficit in the funds of the municipality at the end of the fiscal year. To effectuate that purpose the budget is to be carefully made, and the estimate of expenditures therein specified is to be faithfully observed. To that end a duty is imposed on the board to keep account of all claims allowed, allocating each claim to its respective budgeted item or fund; to keep a check on the obligations allowed, seeing that no budgeted item is overdrawn. Under section 79-2934 the appropriation for each individual fund as set forth in the budget "shall not be used for any other purpose." The board therefore was without authority to borrow from one budgeted item to pay for items not budgeted, or which should have been budgeted

in some other item. Under the budget law each of the budgeted items is separate and distinct—in effect a trust fund earmarked for a particular purpose. Clearly it is contrary to the letter and spirit of the law for the board to borrow from one item fund to pay the obligations chargeable to another item fund, or to pay an obligation not budgeted at all. Under sections 10-1113 and 10-1114, it is declared unlawful to pay any order, warrant, etc., "in excess of the amount of the funds actually on hand in the treasury at the time *for such purpose.*"

The action of the board in paying the 1937 obligations out of the 1938 budget funds, finds no justification in the statutes. If the payment of claims not included in the budget is to be held within the power of the board, there is nothing to prevent the board from using all moneys on hand for the payment of any indebtedness, thus defeating the purpose both of the budget law and of the cash-basis law. For if the revenues allocated to the specific items in the budget may be used to pay obligations not in the budget, and the unpaid items in the budget are to stand as valid obligations, the board is permitted to do indirectly what it cannot do directly. It would defeat the very purpose of the cash-basis and budget laws.

We think the claims sued on are unenforceable in this action under the statutes quoted. The judgment is reversed.