Nos. 35,500, 35,501

THE GRIDLEY RURAL HIGH SCHOOL DISTRICT No. 2, *Appellant*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF WOODSON, *Appellee.*

(125 P. 2d 383)

Opinion filed May 9, 1942.

*Thomas C. Forbes,* of Eureka, argued the cause, and *Harold G. Forbes,* of Eureka, was on the briefs for the appellant.

*E. E. Lamb,* of Yates Center, argued the cause, and *Clyde Hill,* of Yates Center, was on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: Gridley Rural High School District No. 2 of Coffey county brought two actions against the board of county commissioners of Woodson county, to recover tuition allegedly due by reason of attendance at the high school of students residing within Woodson county. The first action pertained to the school year 1938-1939, the second to the school year 1939-1940. In both actions the plaintiff district was denied recovery, and it appeals. As both

appeals involved the same questions they will be considered together.

The pleadings in each case were similar. The petition alleged the status of the parties; that applications were filed for permission to attend the plaintiff high school; that compliance was had with statutes authorizing pupils under circumstances as contained in G. S. 1935, 72-3013 and 72-3806, to attend high school in an adjacent county, the filing of claims by the plaintiff high school, the denial of the claims, etc. The gist of the answers was that at the time the applications mentioned in the petition were made, and subsequently approved, the defendant did not have in its general fund moneys, credits or funds available for payment of plaintiff's claims, and that by virtue thereof and of the cash-basis law (G. S. 1935, 10-1101 *et seq.*), any action of the county superintendent or other official purporting to create a liability against the defendant and in favor of the plaintiff was null and void, and that at all times mentioned there were no provisions in the defendant's budget whereby funds were appropriated for the payment of the alleged claims, and that the claims could not be paid for the reason defendant could not violate the provisions of the budget law (G. S. 1935, 79-2925 *et seq.*) Defendant further alleged that at all times mentioned it had levied for its general fund the maximum levy authorized by law.

The two causes were submitted to the trial court on agreed statements of fact, and for our purposes showed the following: The plaintiff district is situated in Coffey county and lies adjacent to the south county line. Both Coffey and Woodson counties operate under the Barnes high-school law. In the latter part of August, 1938, twenty-three pupils residing in Woodson county presented written applications to the county superintendent of Woodson county for permission to attend the plaintiff school during the ensuing year. We need not set forth the allegations showing their qualifications to make the applications. The county superintendent withheld action on the applications until the latter part of November, 1938, when, after a suit in mandamus had been started, she rejected each application. An appeal was taken to the state superintendent of public instruction, and on December 13, 1938, that officer approved the applications. The applications so approved were presented to the plaintiff school, which granted permission to the pupils to attend, written consent being endorsed on the origi-

nal applications. The pupils attended the plaintiff school for the school year. The several applications with the various approvals and consents were filed with the county clerk of Woodson county on June 2, 1939, and thereafter in June, 1939, the plaintiff presented its claim for tuition in the amount of $1,636 to the defendant, which in July, 1939, rejected the claim.

During the latter part of August, 1939, thirty pupils residing in Woodson county presented to the county superintendent of Woodson county applications similar to those noted above, for permission to attend the plaintiff school during the school year 1939-1940. Those applications being rejected, appeal was taken to the state superintendent of public instruction, and on December 5, 1939, that official endorsed consent on the original applications, which were presented to the plaintiff school, which granted permission for the pupils to attend the school and endorsed the consent on the original applications, which were filed with the county clerk of Woodson county on March 19, 1940. About June 1, 1940, plaintiff filed its claim for tuition in the amount of $1,942 with defendant, which, in July, 1940, rejected it.

The budgets of the defendant adopted in 1938 and in 1939 contained no provision for tuition or for payment of the claim of the plaintiff. In 1938 and in 1939 the defendant levied for its general fund the maximum levy authorized by law, except as provided by G. S. 1935, 79-1969.

The defendant, after paying all budgeted items of expense, had an unencumbered and unexpended balance in its general fund at the end of 1939 of $3,918.26, and in the same fund a similar balance at the end of 1940 of $422.25.

Plaintiff's motions for a new trial were denied, and it appealed in each case, the specifications of error being alike, and that the trial court erred in finding the following statutes constituted a defense against the plaintiff's claim (1) the tax limitation law (G. S. 1935, 79-1945, 79-1947); (2) the cash-basis law (G. S. 1935, 10-1101 et seq.); (3) the budget law (G. S. 1935, 79-2925 et seq.); and in other particulars which will be mentioned as need be.

It is agreed that both Coffey and Woodson counties operate under the provisions of the so-called "Barnes law" originally enacted as Laws 1905, chapter 397. Under section 7 of the original act tuition in all high schools affected was free to pupils residing in the county where the high school was located. The section was last amended

by Laws 1921, chapter 239 (G. S. 1935, 72-3013) and now provides that pupils, under circumstances set forth in the act, and upon their applications receiving certain recommendations, may attend high school in an adjacent county, and that the county commissioners of the county where the pupils reside shall pay tuition from the general fund of the county. Under the terms of this act there is no appeal from the order and ruling of the county superintendent refusing approval of the applications.

The legislature, by Laws 1929, chapter 239, section 1 (G. S. 1935, 72-3806), made further provisions for attendance at a high school located in a county adjacent to that of his residence and specifying a procedure to be followed. Under the terms of this act, if the county superintendent does not give approval to applications and endorse consent thereon, appeal may be taken to the state superintendent. Any applications and consents must be presented to the governing body of the high school which the pupils desire to attend, for its approval or rejection. In *Gridley Rural High-School Dist. v. Woodson County Comm'rs,* 150 Kan. 704, 95 P. 2d 972, this act was declared to be valid and supplemental to the section of the Barnes law mentioned above. This last section has not been amended since its enactment.

In neither of the above sections is there any provision that applications have to be filed at any particular time, either with reference to the commencement of school, or the happening of any other event. In the cases now before us there is no contention that the procedural steps were not followed, except that the applications were not on file with the county clerk prior to the time the county budget, presently to be mentioned, was prepared.

After the above statutes had been enacted the legislature made comprehensive changes in the law with reference to the creation of liability and the payment of debts by all types of taxing subdivisions or municipal corporations. By Laws 1933, chapter 316, as amended by Laws 1933, chapter 121 (special session) all now appearing as G. S. 1935, 79-2925 to 79-2937, inclusive, provision was made for the preparation and adoption of budgets by all taxing subdivisions, including counties. The amendments made in 1941 need not be noticed. Without going into detail, under the act as in effect at all times with which we are concerned, it was provided that not later than August 1 of each year the governing body of each taxing district must meet and make its budget, which among other items,

must show the amount appropriated for various items to be expended during the ensuing budget year; must give certain notices and hold a hearing on the budget, and, under conditions set forth, should not certify a levy which would raise an amount in excess of that portion of the budget to be raised by tax levy, or in excess of the maximum levy prescribed by law, etc. By G. S. 1935, 79-2934, the budget constituted an appropriation for each individual fund and the appropriation so made should not be used for any other purpose, etc., "and no part of any fund shall be diverted in any manner . . . to any other purpose than that for which the levy was made . . ."

By G. S. 1935, 79-2935, it is unlawful for any governing body: "to create an indebtedness in any manner, for any purpose or to approve . . . any . . . payment after the total unpaid indebtedness . . . shall equal or exceed the amount provided in the budget to be spent from that fund for that budget year."

The same legislature which enacted the budget law also enacted the cash-basis law, Laws 1933, chapter 319, now appearing as G. S. 1935, chapter 10, article 11. Under G. S. 1935, 10-1112, it is unlawful for the governing body of any municipality, which includes a county (G. S. 1935, 10-1101), to create any indebtedness in excess of the amount of funds on hand at the time for such purpose, or to issue any order, warrant or check in excess of the funds actually on hand for such purpose. Under G. S. 1935, 10-1113, it is declared unlawful for any member of the governing board to vote for any order, motion, etc., creating an indebtedness in excess of the amount of funds actually on hand in the treasury, etc.

Appellant directs our attention to *School District v. Wallace County Comm'rs*, 127 Kan. 793, 275 Pac. 188, wherein it was held that claims for high-school tuition arise under and are liabilities created by statute, and to the language of G. S. 1935, 79-2935, of the budget law quoted above, and argues that the liability being statutory it is not one created by the governing body of the county and hence is not within the purview of the budget law. A similar contention was made in *Shouse v. Cherokee County Comm'rs*, 151 Kan. 458, 99 P. 2d 779, where varying classes of claims were involved, including payment of statutory claims and claims not budgeted. In that case effect of both the budget and cash-basis laws was considered, and it was said the theory of the budget law is plain —that the budget must be itemized and classified by funds and when

filed operates as an appropriation for each individual fund, and that when so segregated the funds shall not be used for any other purpose. Answering the specific question that statutory charges are not created by the governing body and therefore do not fall within the budget law, this court said:

"Clearly it is contrary to the letter and spirit of the law for the board to borrow from one item fund to pay the obligations chargeable to another item fund, *or to pay an obligation not budgeted at all.*" (Italics inserted.) (l. c. 466.)

Appellant attempts to avoid the force and effect of that decision by pointing out differences in the facts from those in the case at bar. It is true the Shouse case involved many claims of a type not here involved, and a somewhat different situation so far as the budget was concerned. It did, however, involve specifically whether statutory claims were included and whether unbudgeted items could be paid or made the basis of a judgment, and the holding there that statutory claims were included and that unbudgeted items could not be paid or made the basis of a judgment is decisive of the present matter. Nor do we think it should be overlooked that in the cases before us, the appellant high school was not compelled to approve the applications and receive the pupils (G. S. 1935, 72-3806). Before it approved the applications it could easily have ascertained whether provision had been made in the Woodson county budget for payment of tuition.

We have not overlooked appellant's argument that the school law does not require applications of pupils to be filed at any particular time, and that it may not always be known in time to file applications prior to the time the county's budget is prepared that pupils may be so situated they will be deprived of school attendance unless permitted to attend a high school in an adjacent county. That may be true in cases. In the case before us, notwithstanding every person must know the budget is to be made by August 1, the applications were not filed until the latter part of August of each year. Certainly in the second year the pupils and their parents and guardians knew that no provision had been made for tuition in the county's budget of the preceding year. Had they filed timely applications the governing body of the county would have had knowledge that in good faith would have not been ignored, or if ignored would have afforded at least partial ground for relief. We cannot believe that where twenty to thirty pupils desire to attend the plaintiff school, the situation is such that some of them are not in posi-

tion to file applications and to diligently pursue them so that whether or not tuition moneys should be raised will be known before the budget is finally adopted by the county. And as has been remarked, the appellant district could have refused permission to the pupils to attend when it knew no provision for payment of tuition had been made.

Insofar as the causes before us are concerned, it appears that no provision was made in the county's budget for tuition of pupils residing within the county, but lawfully attending a high school in an adjacent county. That being the case, there were no moneys available to pay the claims filed by the plaintiff. Under the budget law, to which reference has been made, and under the cash-basis law (G. S. 1935, 10-1112, 10-1113) the judgments of the trial court were correct.

By reason of our conclusions, we find it unnecessary to discuss other matters mentioned in the briefs.

The judgments of the trial court are affirmed.