200 P.2d 720

**BROWN et al. v. CITY OF PHOENIX.**

**No. 4942.**

Supreme Court of Arizona.

Dec. 13, 1948.

E. G. Frazier and Charlie W. Clark, both of Phoenix, for appellants.

Jack Choisser, City Atty. and Howard W. Gibbons, Asst. City Atty., both of Phoenix, for appellee.

UDALL, Justice.

This is an appeal from a judgment of the Superior Court of Maricopa County denying appellants (plaintiffs) a recovery (except for a refund of a small tax levied for library purposes) of a substantial sum in taxes paid by them under protest to the City of Phoenix, appellee (defendant).

Of the two assignments of error presented probably the second should first be considered for if it is well taken the appellants were clearly entitled to judgment. Briefly this assignment raises once again the question as to the right of the City of Phoenix, a home rule city, to maintain its own assessor and make its own assessment rolls on its own valuations. The appellants contend that section 73-601, A.C.A.1939 (which both by its language and title clearly indicates that the adoption of its provisions is optional with charter cities), makes it mandatory that appellee adopt for taxation purposes the valuation fixed by Maricopa County's taxing officials. Such contention was rejected by a unanimous court in an able opinion written by the late Chief Justice Ross, in the case of Trigg v. City of Yuma, 59 Ariz. 480, 130 P.2d 59. We have examined the briefs filed in that case and find that the identical arguments now presented were there fully argued and considered. It would seem that the law should now be considered by the bar as well-settled on this point, for twice since that decision was handed down this court has had occasion to put its stamp of approval upon same. See City of Phoenix v. Elias, 64 Ariz. 95, 166 P.2d 589, opinion written by Chief Justice Stanford,

and City of Phoenix v. Wayland, 64 Ariz. 222, 167 P.2d 933, opinion written by Justice LaPrade. We again adhere to the pronouncement upon this point set forth in the Trigg case.

Appellants are resident property owners and taxpayers of the City of Phoenix, and the principal controversy arises over the question whether or not an excessive and therefore illegal budget was adopted by the City for the fiscal year 1943–1944. The facts are not in dispute and the only question presented concerns an interpretation of the governing statutory provisions.

The City's total expenditures for the fiscal year 1942–1943, exclusive of expenditures proposed for school, bond, special assessment and district levy purposes, were $2,794,254, consisting of the following:

| | | |
|---|---|---|
| *Item 1* | Total amount of budget adopted for the fiscal year 1942–43, | $2,203,862.00 |
| *Item 2* | Surplus revenues expended between July 1, 1942 and March 12, 1943, the date when Chapter 38 of the 1943 Session Laws with the emergency clause became effective, | 281,482.43 |
| *Item 3* | Amount of expenditures made between March 12th and June 30th, 1943, pursuant to authority of the Arizona State Tax Commission as emergency grant issued after March 12, 1943 and prior to June 30, 1943, | 308,910.10 |
| | Total | $2,794,254.53 |

The City in adopting its budget for the fiscal year 1943–1944 used this figure last stated as the base upon which to apply the ten per cent budget limitation. It is the contention of the appellants that the City should have applied the budget limitation on the basis of the total of items 1 and 2, supra. This amount of $2,485,344.43, plus ten per cent thereof ($248,534.44), makes a grand total of $2,733,878.87, and according to their view, this is the maximum sum the City might include within the 1943–1944 budget. The City budget actually adopted for this period, however, totaled $3,055,295. The difference between these two totals ($321,416.13) constitutes the claimed excessive levy which is the basis for this suit. It will thus be seen that the key to the solution of our primary problem is a determination of what properly constitutes the base for applying the ten per cent limitation for the budget of the fiscal year 1943–1944.

Over the years the legislature has, from time to time, changed this base, and the provisions relating thereto have varied greatly, as will be seen from an examination of the following statutes. See Title 49, Chapter III, R.S.A.1913; Chapter 52, Session Laws of Arizona 1921; Chapter 75, Article 4, R.C.A.1928; Chapter 73, Article 5, A.C.A.1939; Chapter 38, Session Laws of Arizona 1943; Chapter 98, Session Laws of Arizona 1945. The lawmakers apparently have been constantly striving to enact an effective and workable budget law so as to keep a tighter rein on expenditures of public funds by governing bodies. Certain abuses did, however, grow

up within the framework of the law. For example, prior to the adoption of the amendment, in 1943, to section 73-503, A.C.A.1939, there was an effective method (which it appears had often been employed) of circumventing, to some extent, the budget law. Boards of Supervisors and governing bodies of incorporated cities and towns within the state, by underestimating receipts during the fiscal year from sources other than direct property taxation, could utilize the excess funds thus collected in liquidating the lawful obligations and liabilities incurred by such governing bodies even though provision had not been made therefor in the budget for that year. This was made possible by the provision of the budget law to the effect that no expenditures should be made for purposes not included in the budget, nor debts, obligations or liabilities incurred in excess of the amounts specified in said budget for the purposes therein named, nor beyond the amounts therein proposed to be raised by taxation, "* * * 'except when the other sources of revenue have been and are first received as a means of liquidating such extra obligations and liabilities.'" See Batterton v. Pima County, 34 Ariz. 347, 271 P. 720; Pima County v. Grossetta, 54 Ariz. 530, 97 P.2d 538. It was doubtless to put an end to this practice of side-stepping the limitation within the budget law that the legislature enacted Chapter 38, Session Laws of Arizona 1943, which amended section 73-503, supra, and added the following proviso:

"* * * No expenditure shall be made for a purpose not included in such budget, and no debt, obligation, or liability shall be incurred or created in any fiscal year in excess of the amounts specified for each purpose in the budget for such fiscal year as finally adopted, except when authorized under and pursuant to the provisions of section 73-504, Arizona Code of 1939, irrespective of whether the county or city at any time has received or has on hand funds or revenues in excess of those required to meet debts, obligations and liabilities incurred under such budget."

It thus became necessary to obtain the express authorization of the state tax commission in accordance with the provisions of section 73-504, supra, before any expenditures could be made or obligations incurred which were not provided for in the budget for the current fiscal year, irrespective of whether adequate funds were available therefor. The check thus placed upon the governing bodies was that they must show an "emergency" within the meaning of the law before they could make any such expenditures.

■ This case, then, must be determined by the law as it stood after the enactment of this amendment of 1943, as applied to the facts presented in the instant case. This amendment became effective, because of the emergency clause attached thereto on March 12, 1943. The answer to our problem lies within a proper interpretation

of the following sentence of section 73-503, supra, as so amended.

"* * * When such hearing has been concluded, the estimate as finally determined upon shall be adopted, and shall constitute the budget of the county or city for the fiscal year, but the total of amounts in such budget proposed for expenditure shall not exceed by ten (10) per cent *the aggregate of actual expenditures for the previous year exclusive of expenditures for school, bond, special assessment and district levy purposes. * * '*"* (Emphasis supplied.)

When we apply the clear and unequivocal language of this sentence to the facts of this case, it becomes apparent that the City of Phoenix, in adopting its budget for the year 1943–1944, correctly and in compliance with the law included within the base upon which the limitation was applied the sum of $308,910.10 (item 3, supra). For this amount was an *actual expenditure* during the fiscal year of 1942–1943, and certainly is not encompassed within the exclusions set forth in said section.

There is but one other contention advanced by appellants that we need consider. They seek to draw a distinction between the disbursements from surplus revenues expended prior to March 12, 1943, as set forth under item 2, supra (which they concede was properly included in making up the base upon which to apply the

limitation), and those expenditures made after the effective date of the 1943 amendment, which are set forth under item 3, supra. It is their theory that under the language of section 73-504, A.C.A.1939, the sum shown under item 3 was expressly excluded from the makeup of the budget for the next fiscal year, i.e., 1943–1944. In support of this contention they rely upon the following portion of this section:

"* * * *Tax levies* for such emergency liability shall not be subject to the ten (10) per cent limit hereinbefore provided, and the *amount of such levies* for such emergency liabilities shall be excluded from the amounts upon which the ten (10) per centum limitation for tax levies for the succeeding year are based." (Emphasis supplied.)

The fallacy of appellants' argument lies wholly in their misinterpretation of the application of the above-quoted portion of the section. By the choice of the language used it must be concluded that the legislature intended to make such an exclusion only in cases where a *tax levy* was necessary to meet the emergency liabilities authorized by the tax commission. In the instant case no *tax levy* was necessary to liquidate the authorized emergency expenditures, as the entire amount thereof had been met from excess revenues received from sources other than direct taxation. Had the legislature intended to also exclude all emergency expenditures, in cases

such as this, it doubtless would have chosen language appropriate for the purpose.

We find no error in the record, hence the judgment must be affirmed.

STANFORD, C. J., and La PRADE, J., concur.