297 P.2d 356

Lorna LOCKWOOD, Judge of the Superior Court of Maricopa County and Judge of the Juvenile Court of Maricopa County, Appellant and Cross-Appellee,

v.

The BOARD OF SUPERVISORS OF MARICOPA COUNTY, a legal subdivision of the State of Arizona, James Hart, Sr., James O'Neil and James Lindsay, Appellees and Cross-Appellants.

No. 6038.

Supreme Court of Arizona.

May 8, 1956.

Rehearing Denied June 12, 1956.

Lewis, Roca, Scoville & Beauchamp and John P. Frank, Phoenix, for appellees and cross-appellants.

Snell & Wilmer and Perry M. Ling, Phoenix, for appellant and cross-appellee.

WINDES, Justice.

Disagreement arose between the board of supervisors of Maricopa county and the judge of the superior court assigned to the handling of juvenile matters, concerning their respective powers relating to the operation of the juvenile code. The board of supervisors instituted a friendly action against the judge of the court seeking a de-claratory judgment defining their respective powers and duties. The trial court rendered judgment only portions of which are challenged as being incorrect.

The judge appeals from the following numbered paragraphs of the judgment:

"1. The Juvenile Court, in its operation of the Juvenile Department, is subject to the general budgetary practices of the County, both as to the original budget and as to expenditures over the budget, in the same fashion as any other department of the County. The Juvenile Court must present in behalf of the Juvenile Department an estimated budget; it must abide by any reduction the Board of Supervisors may see fit to make therein; and it must not exceed its budget unless by authorized emergency levy.

"3. In connection with automobiles operated by the Juvenile Department and the Juvenile Court, the Board of Supervisors is fully authorized to supervise and control their purchase and operation. The Board may require the identification of these automobiles as it sees fit.

"5. At the present time the Juvenile Department is entitled to a maximum of nine probation officers, there being 434 persons now on probation. These nine probation officers include the chief probation officer and his deputy, whose positions are included

within the one to fifty ratio established by the statute for the determination of the number of probation officers.

"6. The phrase 'persons on probation' excludes neglected and dependent children under the supervision of the Juvenile Court and juvenile traffic offenders. The Juvenile Court is legally authorized to appoint office assistants in the ratio of one to fifty cases to handle these categories of persons within its jurisdiction."

Paragraph one of the judgment involves an interpretation of A.R.S. §§ 42–302 and 42–303, hereinafter referred to as the budget law in connection with certain provisions of the statute defining the powers and duties of the court handling juvenile matters. A.R.S.1956 title 8, chapter 2, article 2. There are certain obligations authorized by law which this court has ruled are not limited by the provisions of the budget law, such as obligations for the payment of jury fees, Fullen v. Calhoun, 39 Ariz. 40, 3 P.2d 786; obligations for the payment of fixed salaries, Maricopa County v. Armstrong, 42 Ariz. 317, 25 P.2d 1023; and statutory obligations for the purchase of property to satisfy delinquent special assessments for street improvements, Wise v. First National Bank of Nogales, 49 Ariz. 146, 65 P.2d 1154. The basic reasons for excepting these obligations from the limitations of the budget law is that they are public charges fixed by law, the incurring of which is beyond the control of the board of supervisors. They are placed in the category of charges fixed by law and must be paid even though they exceed the budget estimate for the current year. If such excess occurs, the same must be cared for in the succeeding budget. Fullen v. Calhoun, supra. It therefore is apparent that the trial court's declaration that the juvenile court is subject to the budgetary practices "as to expenditures over the budget" and that it "must abide by any reduction the board of supervisors may see fit to make therein" and that it "must not exceed its budget unless by authorized emergency levy" is not correct to the extent that no exception is made for such charges as are imposed by law and beyond the control of the board of supervisors.

■ The court has the power to appoint a chief probation officer, deputy probation officers and necessary office assistants and fix their salaries subject to the approval of the board. A.R.S. §§ 8–204 and 8–205. When these appointments are legally made and salaries fixed and approved and the services rendered, the same become legal obligations of the county and must be paid, even if the result might operate to exceed the budget estimate. Maricopa County v. Armstrong, supra.

■■ By the provisions of A.R.S. § 8–231, the juvenile court is empowered to allow by order a reasonable sum at the expense of the county for the support of children over whom it has jurisdiction. Such orders when made become county obliga-

tions and should the aggregate of such orders exceed the budget estimate therefor, the same are nevertheless valid county obligations. The provisions of A.R.S. § 8–235 empower the court when a child under its jurisdiction needs medical or surgical care to order the same and the expense thereof when approved by the court "shall be a county charge". When the court exercises this power by ordering medical or surgical care and approves the expense thereof, it becomes a fixed statutory county obligation even though the aggregate of such orders should exceed the budget estimate provided therefor.

■ We do not think the trial court was incorrect in ruling that the board of supervisors may control the purchase and operation of automobiles used by the court. This assumes, of course, that such control does not come within the orbit of hampering action that would prevent the court from operating as contemplated by the juvenile code. The board of supervisors has the power to make orders concerning use of county property and to prescribe adequate identification thereof so long as its action is not arbitrary. A.R.S. § 11–201.

■ The parties disagree as to the proper interpretation of A.R.S. § 8–204, reading as follows:

"The judge presiding in the juvenile court may appoint a chief probation officer, a deputy probation officer and such additional deputy probation of-

ficers, not exceeding one for each fifty persons on probation, as he deems necessary. * * *"

The learned trial judge was of the view that in calculating the number of probation officers on the basis of one for each fifty persons on probation the chief probation officer should be included. We are unable to agree with this interpretation. Our view is that when the statute speaks of "one for each fifty persons on probation" it means one deputy probation officer for each fifty persons on probation. This interpretation authorizes one chief probation officer, and not to exceed one deputy probation officer for each fifty persons on probation.

■ In paragraph six of the court's judgment, it is declared that "persons on probation excludes neglected and dependent children * * * and juvenile traffic offenders". We agree that the term excludes neglected and dependent children for they are not and should not be placed on probation. Only delinquent children are placed on probation. We cannot agree that juvenile traffic offenders are necessarily excluded from the phrase "persons on probation". Under the provisions of A.R.S. § 8–201, a child who has violated a law of the state or an ordinance or regulation of a political subdivision thereof comes under the definition of a delinquent child and should the court in its wisdom order him placed on probation for violating the traffic laws, he would thereby become a person on probation. Whether one is a person on pro-

bation is measured by whether he is delinquent and has been ordered placed on probation.

◼ The board of supervisors cross-appealed from the following declaration by the trial court:

"The Juvenile Court is legally authorized to appoint office assistants in the ratio of one to fifty cases to handle these categories of persons (neglected and dependent children and juvenile traffic offenders) within its jurisdiction."

We can find no law that authorizes the court to appoint one office assistant for each fifty dependent and neglected children. A.R.S. § 8–204 provides that in counties of the first class the judge may appoint "necessary office assistants". There is nothing in the statute that measures the necessity by the number of dependent or neglected children and we have no right to supply such a provision. We do not legislate, we interpret.

◼ Much argument is presented, under the following proposition of law, attempting to relieve the court of any budgetary control:

"The inherent powers of superior courts which are essential to the maintenance of their existence and to the exercise of the jurisdiction conferred upon them by law may not be limited by the law relating to county budgets."

We do not question that the board of supervisors could not under the budget law or any other law so conduct county affairs as to prevent the court's existence and operation as such but no such attempt is made under the facts in this case. Therefore, this proposition of law has no application. If any such unlikely situation arises and is presented, we can dispose of the matter.

◼ Paragraph one of the judgment should be modified to declare that the judge handling juvenile matters is subject to the general budgetary practice of the county and must abide by reductions made by the board of supervisors, except as to expenditures which the statutes expressly authorize the court to incur or as to items that have become fixed by law.

Paragraph five of the judgment is modified to declare that the judge handling juvenile matters may appoint not to exceed one deputy probation officer for each fifty persons on probation, in addition to the chief probation officer.

Paragraph six of the judgment is modified to declare that the phrase "persons on probation" excludes neglected and dependent children and includes such juvenile traffic offenders as have by order of the court been placed on probation. The juvenile judge is authorized to appoint such office assistants as are necessary to enable the juvenile court to function properly but not necessarily in the ratio of one to fifty dependent and neglected children.

As herein modified the judgment is affirmed.

PHELPS and STRUCKMEYER, JJ., concurring.

UDALL, Justice (dissenting in part and concurring in part).

I concur in the disposition made by my brethren of the majority as to the following matters, viz.:

(a) Disapproval of the interpretation adopted by the trial court excluding juvenile traffic offenders when computing the number of "persons on probation". (Par. 6 of judgment, supra.)

(b) Reversal of that portion of the judgment attacked by the appellee's cross-appeal relative to the number of office assistants. (Par. 6, supra.)

(c) Affirmance of the lower court's ruling contained in "Par. 3" of its judgment which upholds the right of the Board to control the purchase, operation and identification of automobiles used by the court in discharging its prescribed duties under the juvenile code.

Other than as to items (a) and (b) above, I find myself wholeheartedly in accord with the judgment of the learned trial court; and in order that those portions of the judgment to which no exception was taken may be preserved for the guidance of the bench and bar, the same are set forth in an appendix attached to this dissent.

The majority opinion holds that the trial court was in error as to the determinations made in paragraphs one and five of the judgment. I dissent only as to these two phases of the decision.

In the first place, as to paragraph five of the judgment, I disagree with the strained and unrealistic interpretation which I consider the majority has placed upon the statute, Section 8-204, A.R.S.1956, supra, dealing with the number of probation officers that may be appointed by the judge handling juvenile matters. The fundamental rule of construction is to ascertain and give effect to the intention of the legislature as expressed in the statute, Hicks v. Krigbaum, 13 Ariz. 237, 108 P. 482; State v. Borah, 51 Ariz. 318, 76 P.2d 757, 115 A.L.R. 254; and where language of a statute is susceptible of two interpretations this court should adopt a reasonable, rather than an unreasonable, interpretation. Hammons v. Waite, 30 Ariz. 392, 247 P. 799. Ambiguous statutes must be construed in view of the purposes which they are intended to accomplish. Bank of Lowell v. Cox, 35 Ariz. 403, 279 P. 257.

Applying these rules of statutory construction to our problem it must be conceded that the statute in question is somewhat ambiguous and very loosely drawn. There is no indication that the limiting phrase "not exceeding one for each fifty persons on probation", is intended to limit only appointment of *deputy* probation officers any more than it should limit both

deputy and *chief* probation officers. Thus the section is susceptible of two interpretations, and of itself does not indicate the true legislative intent behind the wording. But if we keep in mind that the statute has state-wide application—i. e., it was not drawn just for Maricopa County—then I firmly believe we must conclude that the legislature intended by the language used to authorize the appointment of one probation officer for each fifty persons on probation and that in making such computation the chief probation officer was to be included therein. If this were not so then in three-fourths of the counties of the state where the juvenile probationers at any one time are typically fifty or less, the taxpayers would be saddled—if the resident judge saw fit to do so—with the salaries of both a chief probation officer and a deputy probation officer to do the work which could be, and no doubt is, readily handled by one officer. The interpretation which I urge should be given this statute would keep it in line with our pronouncement in Hicks v. Krigbaum, supra, to the effect that statutes should receive a sensible construction, such as will effect the legislative intention, and, if possible, so as to avoid an unjust or absurd conclusion.

Secondly, the majority's concept of the operation of the budget law is so at variance with my ideas of the governing principles that I most vigorously dissent from that portion of their decision which holds in effect that the judge of the superior court in the handling of matters relating to the operation of the juvenile code is not subject to the budget law. The legislature over the years has endeavored to strengthen budgetary control over the expenditure of public funds and prevent the practice of sidestepping the limitations prescribed therein. This court until today's decision has consistently upheld and enforced the provisions which govern fiscal operations of the political subdivisions of the state. I cite but a few of the many cases so holding, viz.: Bank of Lowell v. Cox, supra; City of Phoenix v. Kidd, 54 Ariz. 75, 92 P.2d 513, on rehearing 54 Ariz. 123, 94 P.2d 428; McDonald v. Frohmiller, 63 Ariz. 479, 163 P.2d 671, 164 A.L.R. 922; Hunt v. Norton, 68 Ariz. 1, 198 P.2d 124, 5 A.L.R.2d 668; Brown v. City of Phoenix, 68 Ariz. 99, 200 P.2d 720; Lee v. Coleman, 63 Ariz. 45, 56, 159 P.2d 603, 608. Cf. 20 C.J.S., Counties, § 227 b., Note 91, page 1102.

Because I feel that the majority has overlooked the underlying statutory provisions and the basic salutary purpose of the budget law, I quote from Chief Justice LaPrade's clear exposition of the matter in Lee v. Coleman, supra:

"* * *. *A claim to be a legal claim against the county must not only be for a necessary purpose, but under our law the expense must have been anticipated and provision made therefor in the county budget, and no expense incurred or payments made in excess of the budget are legal.* Section

73–502, A.C.A.1939; [citing cases]. The budget sections alleged to have been violated are sections 73–502 and 73–503, A.C.A.1939. The first section requires the board of supervisors to prepare (1) a full and complete statement of the financial affairs of the fiscal year last passed, (2) an estimate of the different amounts which may be required to meet the public expense for the ensuing year, fixing the amounts proposed for all subjects of recurring items of expense, and (3) a statement of the amount of money required for each item of expenditure necessary for county purposes.

"The estimate shall be entered upon the minutes of the governing body and shall be fully itemized, showing under separate heads the amounts proposed as required *for each department of the county,* etc. It shall also show * * a full and complete disclosure and statement of the contemplated expenditures for the ensuing year, showing the amounts proposed to be expended from each separate fund. Section 73–503 provides for a public hearing on the estimated budget. It specifically provides that 'the estimate as finally determined upon, shall be adopted, and *no expenditure shall be made for a purpose not included in such budget, and no debt, obligation, or liability shall be incurred or created in any year in excess of the amounts specified therein as finally adopted for each purpose therein named; * * *.'*

"The two sections provide for the making of the budget, its publication, notice of public hearing thereon, and the final adoption after public hearing. The purpose of these hearings is to acquaint the taxpayers and citizens of the county with the financial needs of the county for the ensuing fiscal year as viewed by the supervisors. At such meetings taxpayers shall be heard to make recommendations and voice protests. When a budget shall have been finally adopted, the taxpayers know how much money is proposed to be raised and the various purposes for which the money will be expended. * * *" (Emphasis supplied.)

The record in the instant case discloses the modus operandi followed by the Board in preparing the budget for each department of county government. Budget forms are sent to the department head (including appellant judge) early in the year asking for their estimate of necessary expenditures. Before the budget is finally adopted conferences are held with department heads and all questionable items resolved. The Board is further enlightened by knowledge of the actual expenditures of the various departments for the previous year. It then adopts the budget, and in my opinion each department (including the appellant) is obligated to live within it. Thereafter when an emergency arises the department affected

may appeal to the Board to request the state tax commission to approve an emergency appropriation to cover unexpected expenditures under the provisions of Section 42–308, A.R.S.1956.

In virtually exempting the judge handling juvenile matters from the operation of the budget law I fear that my brethren of the majority are overlooking a basic principle of our Anglo-Saxon form of government. I refer to the power over the purse. This potent control is vested exclusively in the legislature on the state level, and applies to both the judiciary and the executive branch. For instance, this court submits its budget, one or more of its members appear before the appropriation committees of the House and Senate, and it then lives within the amounts finally set up in the general appropriations bill. If a state agency incurs indebtedness in excess of the budget its only recourse is to obtain a deficiency appropriation from the legislature. On the county level the Board is established by law as "the legislative authority of the county government". Section 11–251, subd. 29, A.R.S.1956. Hence the power rests with the board of supervisors—not the judge of the court handling juvenile matters—to ultimately determine the budget for that department in the making of both original and deficiency appropriations. To me such safeguards are essential, if the rights of taxpayers are to be protected and if expenditures of public money are to be kept in hand. Otherwise, budgetary chaos ensues.

It is most significant that all other departments of the Maricopa County government including the other eight divisions of the superior court abide by these general budgetary practices. I can perceive of no sound legal justification for not requiring the juvenile department to do likewise. The majority opinion places it at most *only half* under the budget, which creates an intolerable situation. To show how serious the matter is, it is only necessary to point out that appellant and her predecessor in office in the three fiscal years between 1951–1954 exceeded their budget in amounts ranging from $19,000 to $80,000, not a penny of which was authorized by any emergency levy. Quaere: how can the board of supervisors possibly fix a realistic tax rate unless all expenses of every character are included in the budget estimates finally adopted? The majority avoids any attempt to answer this pertinent inquiry.

The only justification advanced by the majority for its holding that the judge handling juvenile matters may, without limit, exceed the budget as to the items covered by paragraph 5 of the judgment is that the legislature in adopting the juvenile code had declared such expenditures "shall be a county charge". May we not safely assume that *all* expenditures (aggregating annually some twelve million dollars) made by respondent Board are proper "county charges"? Of course they are! Section 11–601, A.R.S.1956, enumerates what are county charges. Subdivision 10 thereof expressly covers the items in question, viz.:

"County charges are: * * *

"10. Every other sum directed by law to be raised for a county purpose *or declared to be a county charge."*

I submit there is no magic in the phrase "shall be a county charge" which transports items so designated from the ordered realm of budgetary control to the "no-man's land" of individual departmental discretion. These words alone create no specific expressed or implied supervening power in the juvenile judge to stand exempt from or superior to the general budgetary law.

The majority decision, as to these budgetary matters, is, I believe, also based upon another false premise. The decision asserts that "there are certain obligations *authorized by law* which * * * are not limited by the provisions of the budget law * * *" (emphasis supplied) and that the expenditures here drawn in question fall within that classification. Cited in support thereof are the following Arizona cases, viz.: Maricopa County v. Armstrong, Wise v. First National Bank, and Fullen v. Calhoun. The principle enunciated in the latter case is to the effect that certain obligations "are *fixed charges,* made so by law, and all the board has to do is to calculate the amounts". (Emphasis supplied.) The majority has thus failed to differentiate between "fixed charges" and obligations merely "authorized by law". That there is a vast distinction between the two is borne out by the decision of this court. As the late Chief Justice Ross made clear in the Armstrong case, supra [42 Ariz. 317, 25 P.2d 1024]:

"Some of the items of the county budget are recurrent and *fixed by law,* and *automatically* become a part of the budget; such as interest and principal of bonds of the county, special tax levies, and salaries of officers, etc. Then there are *expense items,* such as printing, advertising, etc., *that must be contracted for at prices or sums not fixed by statute but by contract. These latter must be estimated and put into the budget, and * * * no expenditure shall be in excess of such estimates,* and debts, obligations and liabilities in excess thereof may not be incurred or created, * * *." (Emphasis supplied.)

By the simple expedient of finding that expenditures of the juvenile judge are legally authorized, the majority—on the basis of those Arizona cases—exempts same from the budgetary limitations. In that respect the following pronouncement by the Kansas Supreme Court in Shouse v. Board of County Com'rs, 151 Kan. 458, 99 P.2d 779, 783, is apropos:

"The board of county commissioners has no authority to pay claims or obligations of any kind *except* as authorized by the law of the state. The budget is an estimate of the revenues and expenditures for the ensuing year and is made up of items of expenditures to be made,—all authorized by law. *If*

*we delete from the budget all obliga-
tions that arise by force of our statutes,
it would be difficult to find any field
whatever for the operation of the
budget law."* (Emphasis supplied.)

I agree that the items in question are
"authorized by law" but it is my view that
these obligations can only be paid to the
extent that there are unexpended funds in
the budget to meet same unless an emer-
gency expenditure be authorized by the
tax commission. How can it rationally be
said that the matters of *expense* here in-
volved—i. e., appointment of *additional*
probation officers and other assistants, *un-
limited support of children and furnishing
surgical and medical care* for those juve-
niles over whom the court has jurisdiction
—falls within the rule of *"expenses" fixed
by statute?* If this be so, the question might
well be asked—are there *any* items of in-
debtedness sanctioned by the juvenile code
that would *not* similarly be exempted from
budgetary control? Certainly much in-
debtedness is incurred by contract and is
wholly indefinite as to amount. I do not
believe appellant can by her own ipse dixit
make these items fixed charges.

Let us examine more closely the three
Arizona decisions relied upon by the ma-
jority members in upholding the right of
appellant to disregard the budget law. In
my opinion none of these decisions, if criti-
cally analyzed, sustain them.

The Fullen case, supra, is the only deci-
sion of this court that ever sanctioned the
expenditure of county funds in excess of
the budget. The facts were that funds
budgeted for jury purposes were exhausted
in midyear and the Board was refusing to
pay further jury fees or mileage for jurors.
The practical effect of this would have been
to close the courts insofar as jury trials
were concerned, thus depriving litigants of
the right to a jury trial guaranteed them
by the state constitution. Jurors' fees and
mileage were, of course, already fixed by
statute. The court said [39 Ariz. 40, 3 P.2d
788]:

"The compensation of jurors is as
much fixed as the salary of officers, the
interest or principal of county bonds,
or items or amounts of special levies."

Having found that this was a *"fixed* expen-
diture" it ordered that the judgment be re-
versed with directions to issue a writ of
mandamus requiring the Board to continue
to pay jurors, even though it required the
registering of warrants issued therefor.
(Incidentally, an examination of the orig-
inal court file in the Fullen case discloses
the parties litigant stipulated that no emer-
gency existed which would authorize the
state tax commission to permit incurring
indebtedness over and above the budget
estimate, hence that escape route was not
even mentioned in the decision.)

The Fullen case says only that the board
of supervisors cannot limit funds budgeted
for constitutionally imperative functions by
the exercise of its budgetary discretion so
as to hinder the same in derogation of the

constitutional mandate. It points out, solely by way of analogy, that items both fixed in amount and authorized by law must be budgeted by the board, whose action in so doing is purely ministerial and not discretionary. As to items merely authorized but not fixed—i. e. those wherein the amount and need are within the Board's discretion—the following statement appears:

"Some of the expenses of maintaining the county government, *although authorized, are not fixed in amount by any law,* such as * * * care of the indigent sick * * *. As to items of [this] kind, *it is up to the board to fix the sums needed, according to the necessities of the case, and their estimates of such items cannot be exceeded by expenditures * * *.*" (Emphasis supplied.)

Arguendo, if one accepts the view of the majority that the expenditures with which we are here concerned fall into the class of those "authorized by law", then the Fullen decision, which is admittedly based on the theory of a "fixed charge", does not support the conclusion reached by it in the instant case.

In the Armstrong case certain deputy county treasurers sued to recover salaries for services due, *which salaries had specifically been included in the budget.* The only reason for nonpayment advanced was that to cover certain other expenses the county treasurer's office had dipped into the salary funds, whereby nothing was left with which to pay such salaries. We quote from that opinion:

"From the wording of section 3097, Revised Code of 1928 [now Sec. 42–30, A.R.S.1956], we think it is a fair inference that the Legislature intended that the county budget should contain a statement of the expenses of every kind and nature proposed to be raised by property taxation for each county department, public office, or official for the ensuing fiscal year, giving the amount of each item of such proposed expenditures, together with the official salaries attached to such department, public office, or official; * * *.

\* \* \* \* \* \*

"The sums budgeted for salaries and attached to the office of the county treasurer should under the law have been kept intact for the purpose for which they were budgeted and collected. * * *"

The Armstrong opinion plainly says that where "fixed items" are budgeted, the budget must be adhered to and scrupulously followed. The court therein recognized that the deputies' salaries "by operation of law if earned became a fixed liability of the county". It did *not* say that these salaries were free of the provisions of the budget law.

It is notable that in paragraphs 9 and 10 of the judgment (See Appendix) the cri-

terion for fixing salaries in the juvenile department is established. Under the Armstrong rule, salaries thus fixed for the fiscal year may be recurrent items, which must be budgeted for, and thereafter if earned must be paid. However, this does not mean that the judge handling juvenile matters may, for example, appoint probation officers in midyear without any budgetary appropriation having been made therefor, or that an increase in salary must be paid "even if the result might operate to exceed the budget estimate", as the majority now states. To so contend on the authority of the Armstrong case would not be justified.

Nor is the case of Wise v. First National Bank, supra, any authority, in my opinion, for the holding in the instant case. That was a mandamus action, tried before the writer of this dissent, to compel the mayor and aldermen of the city of Nogales *to include within their current budget* funds for the purchase of property to satisfy delinquent special assessments for street improvements. The alternative writ was made peremptory and the officers of the city complied with the mandate. *This was not a case of some department given power to exceed its budget in violation of the budgetary laws.* It was there stated that the ten per cent limitation required under the budget law expressly excluded amounts required for special assessments, and it was further held that [49 Ariz. 146, 65 P.2d 1160] " * * * since the appropriation and,

therefore, necessarily the budgeting of the amount in question is made mandatory by the Legislature, it is in effect an exception to the general rule"—i. e., a fixed expenditure or "mandatory charge", which *must* be budgeted as necessity demands.

I believe the true rule may best be educed from the case of *City of Phoenix v. Kidd,* supra. There, certain city employees sought to recover additional wages for services performed, on the basis of an increase in the minimum wage fixed by the state highway commission *after* the annual budget had been adopted, there being no provisions made in the budget for funds to cover such increase. Plaintiffs argued that the legislature intended the minimum wage provision to control over the budget law, and therefore under the rule of the Fullen case their wages due were "fixed charges" and not governed by the budget law. The court rejected this contention, holding that the minimum wage law had *not* changed the policy of the state as set forth in the budget law. We quote from that opinion [54 Ariz. 75, 92 P.2d 517]:

"It appears, therefore, that all expenditures which are optional with the counties and the municipalities, and are not required by the constitution or a legislative act to be made, are within the provisions of the budget law. * * *If the authorities* of the municipalities *are permitted to hire labor to any extent which they choose, regardless of*

*whether they have budgeted therefor, the entire purpose and effect of the law could and would be defeated* just as much as if they were permitted to contract for the purchase of equipment or materials in excess of the amount provided for that purpose.  * * *" (Emphasis supplied.)

It cannot fairly be said, in the instant case, that expenditures of the juvenile department sanctioned by law are removed from the purview of the budget law either by constitutional or legislative mandate. The power of a judge to create county charges is no more nor less than that of all other branches of the county government, which to date have never presumed to consider themselves above budgetary controls merely because they had power to incur such charges.  To say that the legislature meant to obviate the juvenile court's budgetary problems by simply placing them all, or partly, outside the confines of the budget law by the device of considering them "charges imposed by law and beyond the control of the board of supervisors" is in my opinion the exercise of *judicial fiat* and *not judicial interpretation,* strictly an invasion of the province of the legislature.  I can find nothing in the juvenile code that either expressly or impliedly purports to take the class of expenditures here involved out from under the operation of the budget law.  I repudiate the idea that this department is financially sacrosanct.

The legal principle here involved is of tremendous importance to Arizona taxpayers and those officers of political subdivisions who are charged with handling fiscal affairs.  The majority holding in effect gives appellant carte blanche authorization to incur obligations *to whatever extent she sees fit* without any of the checks and balances set up by the legislature that have heretofore safeguarded the expenditure of public moneys.  Today a serious breach is made in the budgetary wall for the juvenile department; tomorrow it may be some other department of county government which is either unwilling or unable to stay within its budget; the end result will be to open the "floodgates" to financial irresponsibility in the handling of public funds.  It is for these reasons that I register this dissent.

LA PRADE, C. J., concurs in this dissent.

APPENDIX

Portions of Judgment not
Appealed From

2.  The Juvenile Court in its operation of the Juvenile Department must make its purchases of equipment and supplies in accordance with the County purchasing program in the same manner as is required of other departments.

4.  The Board of Supervisors is entitled to regular reports from the Juvenile Court as to the number of persons on probation.

This term is defined as a person who has had a hearing before the Judge of the Juvenile Court and who has been placed on probation by express terms of a court order. Such a person shall remain on probation until the order of the court expires by its own terms, or until the court orders the probation terminated, or until the probationer attains his majority. The resolution of the Board of Supervisors of Maricopa County of September 16, 1954, establishes a valid and appropriate procedure for determining the number of probation officers as defined by this paragraph of this Judgment.

7. The appointment of probation officers to handle adoption and children's colony cases is unauthorized by law. These employees should not be regarded as Juvenile Department employees, but rather as Superior Court employees, and their salaries should be provided for in the Superior Court budget.

8. The existing classification and salary system established by the Maricopa County Board of Supervisors, insofar as the classifications may be applicable to the work performed by probation officers and necessary assistants, is a reasonable, fair and legal basis for the guidance of the Board in compensating County employees.

9. The Juvenile Court has the legal power to fix and the Board of Supervisors the legal power to approve salaries in the Juvenile Department. As applied to the professional employees of the Juvenile Department, and subject to reasonable exceptions as contemplated in the Board resolution of September 16, 1954, the Judge is legally required to fix the salaries within the minimum and maximum limits established by the Board for each position in accordance with the PAS system, insofar as the classifications within that system may be applicable to the work performed by such professional employees, but the Board may not disapprove a salary for a particular person established anywhere within the range set up for such position within an applicable classification.

10. As to non-professional employees of the Juvenile Department, the Court is legally required to establish salaries which are substantially identical with those authorized under the PAS system to the end that similar work shall have similar pay in all County departments. The Board of Supervisors is legally authorized to disapprove any salary which substantially deviates from the PAS plan as to these employees.